# CHARLESTON.

MILLIGAN COAL Co. *v.* POLOWY *et al.*

Submitted May 20, 1924.   Decided September 23, 1924.

1.  EVIDENCE—*Parol Testimony Inadmissible to Construe Unambiguous Written Contract to Sell Land.*

    Parol testimony is not admissible to construe a written contract for the sale of real estate, plain and unambiguous in its language.   (p. 238).

    (Evidence, 22 C. J. § 1474).

2.  VENDOR AND PURCHASER—*Executory Contract for Valuable Consideration to Convey Mining Property Held to Pass Equitable Title to Vendee.*

    Where, in an executory contract of sale, the seller, for a valuable consideration, agrees to sell a certain coal mining property, together with all equipment and mining rights, and agrees to deliver a deed therefor on a certain date, at which date the purchaser agrees to pay the first installment of the purchase money, the equitable title passes forthwith to the vendee.   (p. 238).

    (Mines and Minerals, 27 Cyc, p. 673 [1926 Anno]).

3.  SAME—*Executory Contract Gives Purchaser no Right of Possession; Ordinarily Right of Possession Held to Pass to Vendee Agreeing to put Mines to be Conveyed in Operating Condition.*

    Ordinarily, an executory contract for the sale of real estate vests no right of possession in the purchaser, but where, in a contract of sale of coal mining property, it is agreed that the purchaser, as soon as possible, is to place sufficient improvements on the premises to put the mines in proper operating condition, the right of possession passes to the vendee.   (p. 238).

    (Vendor and Purchaser, 39 Cyc, p. 1621; Mines and Minerals, 27 Cyc, p. 673 [1926 Anno]).

    NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.

Appeal from Circuit Court, Clay County.

Suit by the Milligan Coal Company against J. J. Polowy and others.   From decree dissolving an injunction, plaintiff appeals.

*Reversed; injunction reinstated; cause remanded.*

*Henry S. Cato,* for appellant.
*J. E. Springston,* for appellees.

MEREDITH, PRESIDENT:

Plaintiff, Milligan Coal Company, appeals from the decree of the circuit court of Clay County dissolving an injunction theretofore awarded it by said court. Plaintiff filed its original bill, and the circuit court entered a restraining order against defendant J. J. Polowy, November 17, 1922. Plaintiff filed an amended and supplemental bill, naming as an additional defendant R. E. Santrock, December 5, 1922, and by order of the same date the circuit court awarded to plaintiff a second and more comprehensive injunction. Defendant Polowy responded with an answer, and moved to dissolve both injunction orders and for the dismissal of plaintiff's bills. Plaintiff objected to the filing of the answer, on the ground that it constituted no defense, excepting particularly to certain paragraphs thereof, and upon the issues raised parol evidence was taken. As a result the court dissolved its injunction order of December 5, 1922, but refused to disturb its order of November 17, 1922, and plaintiff prosecutes its appeal as aforesaid.

The controversy rests upon a written contract, of date July 14, 1921, executed by the Carver Fork Colliery Company, a corporation, and M. C. Jennings. The contract reads:

> "This agreement, made and entered into this 14 day of July, 1921, by and between the Carver Fork Colliery Company, a West Virginia Corporation, party of the first part, and M. C. Jennings, party of the second part.
>
> "Witnesseth: That for and in consideration of the sum of ONE ($1.00) dollar, and other good and valuable considerations, the receipt of which is hereby acknowledged by the party of the first part, the said party of the first part hereby agrees to sell, assign, transfer, grant and convey, unto the said party of the second part, that certain tract of · coal and surface land of 400 acres, more or less, and described in that certain deed from the Hartland Colliery Company, a West Virginia corporation, to said first party, which deed is not of record yet, and situate on Middle Creek, Pleasant District, Clay County, West Virginia, together with all improvements, rights, privileges, and all mines, mining machinery, equipment, supplies, now used

by the said party of the first part in operating mines on said property.

"The party of the second part hereby agrees to pay the sum of $85,000.00 as a consideration of the above described property, to be paid as follows:

"The first parties owing two notes for purchase money on the said property purchased from the Hartland Colliery Company, one note in the sum of $21,500, due October 6, 1921, and another note in a like sum of $21,500, which said notes is due October 6, 1922, and the said second party agrees to assume the payment of the said first note of $21,500, due October 6, 1921, and the said note of $21,500, due October 6, *1921*, due aforesaid is to be paid out of the proceeds from stock to be sold by Milligan Coal Company, a West Virginia corporation, and which sum is to be set aside by said company to be used for the purpose aforesaid.

"The said second party agrees further to execute his several notes aforesaid and in the following sums:

"A note of $10,000, to be paid April 6, 1922, second note of $10,000, to be paid October 6, 1922, and a third note of $36,000, to be paid July 1, 1924, however, parties of the first part agree to renew above notes for a period of three years, if requested to do so, but interest to be paid semi-annually in advance at 6 per cent, and said first party to retain a vendor's lien to secure all of said notes aforesaid.

"And as a further consideration the said James Reed, president of said Carver Fork Colliery Company, agrees to take $7,500 stock of the Milligan Coal Company, said stock to be at par. But which said Milligan Coal Company may take over later at its actual worth if it cares to do so.

"Said second party agrees further that he will purchase such equipment as is necessary and do such other things as will be required to put the mines in proper operating conditions.

"The said note of $21,500, which is due October 6, 1921, is not to be renewed but to be paid as aforesaid out of the stock sold by the Milligan Coal Company.

"It is agreed and understood that when the said note of $21,500 is paid, then said first party agrees

to make a deed for the said property to whom the said second party may direct.

"Improvement to be placed on said property as soon as possible.

"CARVER FORK COLLIERY COMPANY   (SEAL)
By JAMES REED, *President.*
By JOS. POLOWY, *Treasurer.*
M. C. JENNINGS   (SEAL)"

The original bill recites that the plaintiff is a duly organized corporation of West Virginia, lawfully doing business therein, with its chief works in Clay County; that defendant Polowy is a Canadian citizen, but a resident of Clay county. It alleges the execution of the contract quoted above, asserting that on the date thereof said M. C. Jennings entered into a contract with the Carver Fork Colliery Company for the purchase, for coal mining purposes, of the tract of land described in the contract; that there was an opened and partially equipped coal mine thereon; that on August 1, 1921, Jennings duly assigned all of his interest in said contract to the plaintiff; and that the plaintiff immediately took possession of the said property, and has since expended $8,000 in equipping and operating the same as a coal mine. It then avers that in February, 1922, the plaintiff, through its proper officers, entered into a verbal agreement with defendant Polowy, whereby the latter was to take charge of the coal mine as manager, with full superintendence of the operation of the mine and the disposal of the coal. It alleges that the agreement was that Polowy was to receive no salary until the mine was ready for operation to its full productive capacity; that it was to be operated in plaintiff's corporate name, and that all monies were to be deposited in the Elk Valley Bank of Clay in its name, subject to checks jointly signed by Polowy and an officer of the plaintiff company. Polowy also was to advance the plaintiff $500 as a loan to assist in the development of the mine. The bill alleges that Polowy took charge of the property under the agreement and that plaintiff designated E. L. Eithel, its secretary and treasurer, to execute its checks and vouchers. It alleges that plaintiff expended the $8,000 under the superintendence of Polowy and in all respects has performed its

part of the verbal agreement with him; but it asserts that defendant Polowy has wholly failed and refused to carry out his contract and has grossly violated the same in the following respects: that instead of operating the mine in the name of the plaintiff, and depositing and disbursing plaintiff's funds as agreed upon, defendant has been and is transacting the business as "Milligan Coal Company, J. J. Polowy", and that he deposits and disburses plaintiff's funds upon his own personal checks; that he in fact wholly excludes the plaintiff from any participation in its corporate business, and from control of its funds. Plaintiff then avers that it is informed and believes that $15,000 has reached defendant's hands through the sale of plaintiff's coal, and that he has on hand a sum in excess of $8000, which money defendant refuses to transfer to plaintiff, or account for in any way; that he thereby is flagrantly usurping complete control of plaintiff's affairs. Plaintiff offers to pay defendant a reasonable salary for his services and to account to him for $500, if defendant has in fact advanced that amount as agreed. It alleges that defendant has no personal property in West Virginia, and that a judgment against him would be unavailing. For all of the aforesaid reasons, plaintiff prayed for an injunction restraining defendant Polowy from carrying on the mining operations in his individual or trade name; from receiving, depositing or disbursing plaintiff's corporate funds in any manner, save in plaintiff's corporate name; from further failing and refusing to transfer and deposit all the funds arising from the sale of plaintiff's coal or other assets to the credit of the plaintiff; and asked that defendant be compelled to account for the assets of plaintiff coming into his hands since the date of the oral agreement of February, 1922.

As stated, the circuit court entered its first restraining order on November 17, 1922. It awarded the injunctive relief substantially as prayed for in plaintiff's bill. That is, it enjoined defendant Polowy:

1. From carrying on and conducting the mining operations of the plaintiff in his, the defendant's, individual or trade name;

2. From receiving and depositing the plaintiff's corporate

funds except in plaintiff's corporate name and to its credit in the Elk Valley Bank, and from disbursing such funds in any other manner, until the further order of the court;

3. From further failing and refusing to transfer and deposit all the funds arising from the sale of plaintiff's coal, or other property or assets, and now in or hereafter coming into his hands, to the credit of the plaintiff, in its name in the Elk Valley Bank.

There was no order as to the accounting prayed for. Plaintiff was required to give bond in the amount of $1500.

The amended and supplemental bill filed December 5, 1922, named two defendants, J. J. Polowy and R. E. Santrock. It adopted and made a part of itself the recitals of the original bill. It recited that subsequent to the issuance of the first injunction defendant admitted that he held $2700, proceeds of coal sold, and that an agreement was entered into between the parties that said amount should be transferred to plaintiff's name, but should not be disbursed by either party until a further order of the court. It recited that by order of its directors of November 20, 1922, J. J. Polowy was discharged from its service, that he was promptly notified thereof, and was directed to turn over all books and accounts to R. E. Santrock, who had been in its service since July 22, 1922. It alleges that it notified Santrock that all shipments of coal were to be in its name. It alleges that on November 23, 1922, it employed F. L. Carter to take charge of the property as its representative, but that when Carter went upon the premises, on November 27th, he was notified by Santrock that he, Carter, was a trespasser and that the property was posted against trespassing. It asserts that Polowy informed Carter that he, Polowy, had never been in plaintiff's employ, and that he therefore disregarded the letter of plaintiff informing him of his discharge. Plaintiff alleges that it is informed and believes that defendant Polowy, claiming to have been in the employ of the Carver Fork Colliery Company since February, 1922, is violating the injunction order of November 17, 1922, in that he has been and is shipping coal in the name of his alleged employer; that he is threatening and intimidating the duly accredited representatives of plaintiff, to prevent plaintiff from operating its mine; and

that he is attempting to hold possession of the property for the benefit of the Carver Fork Colliery Company.

The prayer of the bill is for an injunction restraining defendants Polowy and Santrock and their agents from threatening, intimidating, prosecuting, arresting or in any maner interfering with plaintiff's representatives seeking to take charge of the mining operations and of the disposing of the coal, and to prohibit said defendants from conducting the operations in the name of, or for the benefit of, the Carver Fork Colliery Company, or any other person, firm or corporation.

The circuit court immediately, by its said injunction order of December 5, 1922, awarded the relief as prayed for. The answer of defendant Polowy followed.

He alleges that he is the owner of half of the capital stock of the Carver Fork Colliery Company; he denies that M. C. Jennings ever entered into a contract with the Carver Fork Colliery Company for the purchase of the property in question; that, on the contrary, the Carver Fork Colliery Company, by the said contract agreed to sell the said coal property to Jennings for the price of $85,000, Jennings assuming a note of $21,500, due October 6, 1921, executed by the Carver Fork Colliery Company, and payable to the Hartland Colliery Company. He recites the other provisions of the contract of July 14, 1921, above quoted, relative to the purchase price, and alleges that neither Jennings nor any one for him has done any thing required thereby, and that the agreement never did become a contract of sale, but was a mere offer to sell. He files as ''Exhibit A'' with his answer a copy of the agreement of July 14, 1921. He alleges that as payment of the $21,500 note on its due date, October 6, 1921, was of the essence of the contract, failure to so pay it rendered the agreement null and void. He alleges that he does not know what amount of money the plaintiff company has realized from the sale of its stock, but that none of it was paid to or for the Carver Fork Colliery Company, and that no stock was issued to James Reed, as agreed. He denies that either Jennings or the plaintiff was ever in possession of the property, but avers, on the contrary, that for some time prior to, and ever since, July 14, 1921, the Carver Fork Colliery Com-

pany has been in exclusive possession thereof; that neither Jennings nor plaintiff has had title thereto, nor have they had the right to demand a conveyance. He says it may be true that Jennings attempted to assign his interest in the contract to plaintiff; that if so, no such interest passed; and he denies that plaintiff has spent any sum of money in opening or operating the property. He denies in *toto* any and all of the terms of the alleged agreement of February, 1922, wherein plaintiff alleged that it was agreed that defendant Polowy was employed by the plaintiff company. He admits that he has been in possession of the coal mining property, but alleges that he has been in possession in behalf of the Carver Fork Colliery Company, of which he was a director and officer. He admits that a large amount of coal has been mined and marketed since February, 1922, but asserts that it was produced under the exclusive authority of the Carver Fork Colliery Company. He admits that the monies coming into his hands from the coal business have been deposited in the Elk Valley Bank and disbursed by him in his individual capacity, but denies that such monies belong exclusively or otherwise to the plaintiff. He admits that plaintiff has been excluded from participation in the business, both in fact and as to the business public generally. He denies that $15000 has reached his hands from the sale of coal, or that he has $8000 on deposit, but avers that he has on deposit to his credit approximately $3211.00, accruing from the business, and that there is owing to him on account thereof approximately $2900.00. He avers that he has paid out $18,-672.00, and owes for labor and materials at least $9125.00, exclusive of any compensation to himself. He denies the averment in plaintiff's amended bill that the fund in his name in the bank was or is to be transferred to plaintiff's name, pending the further order of the court. He admits receiving the purported notification of his discharge by plaintiff; denies the employment of Santrock by plaintiff; denies that he advised Carter, plaintiff's pretended representative, that an officer had been called to remove trespassers; denies that he has mined or shipped any coal in his name since the first injunction order; but alleges that both prior and subsequent to July 14, 1921, and since the awarding of

the first injunction order the Carver Fork Colliery Company has mined and shipped coal from the property in its own name and on its own account, and that he, as an officer of said company, has been working in and about the property, which, defendant avers, is not in violation of the injunction.

Defendant alleges that plaintiff is hopelessly insolvent, and has paid nothing either as principal or interest upon the purchase price to the Carver Fork Colliery Company. He asserts that plaintiff's sole purpose is to harass and annoy the said Carver Fork Colliery Company, and prays that both injunction orders be dissolved.

Plaintiff objected to the filing of the answer, and excepted particularly to certain paragraphs, especially those paragraphs of the answer setting up plaintiff's breach of its contract of July 14, 1921, with the Carver Fork Colliery Company.

A large amount of oral testimony was taken and many exhibits were filed, after which the court entered its decree, which purported to be based on its opinion appearing in the record. The decree, as already stated, dissolved the second injunction order, but did not affect the injunction of November 17th. The actual situation, as fixed by the orders entered, therefore, is that defendant Polowy is inhibited from carrying on the mining operations in his individual or trade name; from receiving and disbursing plaintiff's funds in any other name save plaintiff's; and from failing or refusing to transfer and deposit to plaintiff's account the proceeds arising from the sale of plaintiff's assets. He is not required to render an accounting to plaintiff, nor, since the second injunction was dissolved, are he and Santrock restrained from interfering with plaintiff's agents or representatives on the property. As plaintiff's chief object in this suit, as disclosed by the pleadings, is to gain control and possession of the mining property and the proceeds of the coal sold, it would appear from the orders entered that it has in large measure prevailed. Polowy is restrained from operating the mine and handling the proceeds for any one except plaintiff. However, judging from the arguments in the briefs, both parties agree that the material issues have been resolved against plaintiff. For example, plaintiff states, we think correctly,

that the chief issues are: (1) plaintiff's right to operate the coal mine and to take the benefit of the proceeds, which involves the question of the rights to which plaintiff is entitled by reason of its investment in improvements on the property; (2) the status of defendant Polowy; and (3) the character of plaintiff's possession. The issues are not clean cut and separable. They are merely the problems which the somewhat confused situations of the parties present for solution. Plaintiff says all of these matters have been decided against it. We think, as a matter of fact, they were not, but that the parties have become confused by the expressions in the circuit court's opinion, which do not seem to have been carried into the decree. The court, it appears, considered the parol evidence to be of considerable importance. By it each party developed its case along the lines suggested by the bills and answer, and the court stated in its opinion that a preponderance of the testimony sustained Polowy's position that his possession of the coal mining property had been in effect the possession of the Carver Fork Colliery Company, rather than of the plaintiff. It could not get around the fact, so it said, that plaintiff had never paid any part of the purchase price, and largely for that reason, it could not believe that plaintiff was in position to ask a court of equity to relieve it against Polowy. Its final statement was: "The court awards the present active control over the property to the Carver Fork Colliery Company." That opinion was not carried into the decree. In view of these expressed conclusions of thee court it is not surprising that the parties have become confused in their positions. As it is plain that the decree in the case does not represent the views which the circuit court actually entertained, we believe that the most proper and helpful service which we can render is to work out the parties' difficulties, according to their rights under the pleadings.

In the first place, our opinion is that it must be evident that the rights of the plaintiff in the case, whatever they are, must be founded upon the contract of July 14, 1921, between the Carver Fork Colliery Company, and plaintiff's assignor, Jennings. The next query is whether the contract shall be construed alone, or whether it is necessary to look to the sur-

rounding circumstances by means of parol testimony. So far the principles applicable are clear. If the contract is plain and unambiguous, it must be. construed according to its language. If, on the other hand, it is uncertain, other evidence must be examined. Without unnecessary argument, 'we find no ambiguity in the terms of that contract. For a valuable consideration the Carver Fork Colliery Company agreed to sell, upon terms stipulated, to M. C. Jennings, a tract of coal land, sufficiently described. Jennings, in turn, agreed to put such equipment on the property as would be necessary to put the mines thereon in proper operating condition, and to do so as soon as possible. The deed for the property was to be delivered as soon as the first installment of the purchase price, $21,500, was taken care of. It might of course, have gone into more detail as to the nature of the improvements required of the purchaser, but otherwise the terms seem reasonably plain. It was a clean cut bargain, the responsibility of each party was clear. Certain authorities seem to hold that equitable title does not pass under an executory contract of sale until the purchase price is paid (*Chappel* v. *McKnight,* 108 Ill. 570, referred to in *Taylor* v. *Russell,* 65 W. Va. 632, 64 S. E. 923), but this is an erroneous view. Where there is a valid contract for a good consideration, though the legal title remains in the seller, the equitable and beneficial title passes to the purchaser forthwith. Equity looks upon the vendee as the owner of the land. 1 Pomeroy, Equity Jurisprudence (4th ed.) §368, citing many cases. Jennings, and later the plaintiff, his assignee, became in equity the owner of the property. The only thing which remained to be done 'was the carrying out of the respective obligations.

Plaintiff, however, seeks to establish, not only its equitable title, but its right to possession, and its consequent right to the proceeds of the coal shipped, and its right to control the actions of Polowy while on the premises. Under our view, above expressed, these are the real issues to be determined under the contract, and whether that instrument is to be construed according to its terms or by parol evidence, each party maintains entirely distinct and opposite conclusions. Plain-

tiff claims it is entitled to possession, control and proceeds. Defendant says:

> "According to the written contract of July 14, 1921, neither Jennings nor plaintiff was entitled to possession of said property for any purpose until Jennings or plaintiff, or some one for them, should pay the $21,500 due October 6, 1921, and deed made for the property."

In other words, defendant believes that the right to possession should follow the legal title. This is an important question in the case. Defendant cites numerous authorities to the effect that ordinarily an executory contract for the sale of land does not entitle the purchaser to possession. This we could not for a moment dispute. 29 Am. & Eng. Ency. Law, p. 704. But many of the very authorities upon which defendant relies include also this proviso, or a similar one:

> "*In the absence of any express or implied provision in the contract therefor,* the purchaser is not entitled to the possession of the land prior to the time for the consummation of the contract."
> 27 R. C. L. p. 549.

In our view, defendant has lost sight of the qualification which we have emphasized by the italics. The contract clearly stated that Jennings was to place sufficient improvements on the property to operate the mine as soon as possible. How could it be equitably contemplated that this could be accomplished without a transfer of the possession? Certainly it was not to be expected that the purchaser would place the mining equipment on the property and let it remain idle simply to await the transfer of the legal title. Though authorities for this are not numerous, there are a few which sustain this view. See monographic note appended to *Krakow* v. *Wille*, 4 Ann. Cas. 1016, and especially the case of *Corning* v. *Loomis*, 111 Mich. 23. The nature of the implication which confers the right to possession necessarily varies according to the property involved. In the Corning case the purchaser agreed to chop down old trees and set out fruit trees, an improvement no more important than the equipping of a coal mine.

So far we have reached the conclusion that plaintiff, under the contract of July 14, 1921, had the equitable title to, and the right of possession of, the coal mining property. But defendant argues that plaintiff had no right to mine the coal, to deplete the Carver Fork Colliery Company's security. We ask for what other purpose would the possession be an advantage? Reference to the contract shows that not only was the land itself agreed to be sold, but all "improvements, rights, privileges, and all mines, mining machinery, equipment, supplies, now used by the said party of the first part in operating mines on said property." According to this, the mines were being used at the date of the contract. Was it expected that the purchaser was to shut down operations, discharge the employees, and allow the equipment to deteriorate during a period of idleness? It is an inconceivable suggestion. Defendant has raised the point that plaintiff has defaulted in its payments, and that he has been acting to protect his principal, the Carver Fork Colliery Company. That company is not a party to this suit, and we are not called upon to adjudicate its claim upon/ the plaintiff, if it has any. It may be that in mining the coal while it was in default, plaintiff was wasting the security of its vendor, if so, the latter should have pursued one of the remedies open to it. What that remedy should be we do not say. We do say that though plaintiff was in default, nevertheless the Carver Fork Colliery Company had no right to surreptitiously place its representative upon the ground for the purpose of gaining possession of the proceeds of the coal shipped by plaintiff. The remedies open to vendors to secure themselves from loss due to the defaults of purchasers are sure, but they are defined. We do not recognize the course pursued by defendant Polowy as an approved method of enforcing the seller's rights. Conceding all that he alleges in his answer to be true, he no where states that plaintiff had any knowledge of his connection with the Carver Fork Colliery Company, or that he was acting for it. At the very least, the situations of the two companies are such that a disclosure of his representative character would not have been improper. He admits in his answer that subsequent to the issuance of the first injunction order, and while he was in charge of the

property, coal was shipped in the name and for the account of the Carver Fork Colliery Company. This was in open violation of the court's restraining order.

Our conclusion is that upon the showing here made the plaintiff is entitled to the injunctions prayed for in both bills. The circuit court has not passed upon plaintiff's right to an accounting; that question, therefore, is not before us.

Defendant's objection that no bond was required for the second injunction is of no weight. The court found that the original bond was sufficient to cover the second restraining order, which was in substance but an enlargement of the first.

Our order is to reverse the decree of the circuit court dissolving the injunction order of December 5, 1922, to reinstate said injunction, and to remand the case for further proceedings.

*Reversed; injunction reinstated; cause remanded.*