**Walter W. LEWIS and Sadie M. Lewis, Appellants,**

**v.**

**Jimmie D. LOCKHART and Bettye J. Lockhart, Appellees.**

**No. 207.**

Supreme Court of Alaska.

Feb. 20, 1963.

---

Albert Maffei, Anchorage, for appellants.

Charles E. Tulin, Anchorage, for appellees.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

This is an appeal from a judgment of the superior court ordering the appellants as defendants below to specifically perform an option agreement to transfer certain real property.

On January 13, 1959, the appellants, by written agreement, leased two lots and the house thereon to the appellees for 120 days at a monthly rental of $200. Included in the lease agreement was an option which gave the appellees the right to purchase the leased premises during the term of the lease for a total purchase price of $15,000. Rentals paid under the lease were to apply on the purchase price, the balance of which was to be "payable in cash on such terms and conditions as the parties hereto shall mutually agree upon at the time of exercising said option."

On March 31, 1959, the parties executed an instrument designated an earnest money receipt, which recited that consideration in the sum of $600 was given at that time as part payment of the $15,000 purchase price for the same property described in the lease and option and that the balance of the price would be obtained "from an F H A [Federal Housing Administration] secured loan." This latter instrument does not establish any time limit for the procuring of the loan mentioned or for the passing of title.

The appellees made application for the loan and had it approved by the local FHA office; but the loan was never procured mainly because the appellants refused to pay to FHA the required commitment fee of $113.25 for offering the loan for sale to the Federal National Mortgage Association, hereinafter referred to as FNMA. The seller had to pay this fee, under FHA regulations, before the loan would be further processed.[1] A letter from the FHA office requesting such payment was in fact received by the appellants.

1. It appears from the record that after the commitment fee on a loan application (in this case, $113.25) has been paid by the seller to FHA, the loan is offered by FHA to the Federal National Mortgage Association for purchase. FNMA may then commit itself to purchase the loan, but the loan is not actually purchased

Although the appellees remained in possession of the premises until they were evicted therefrom by the appellants on July 4, 1959, they paid their rent only to May 13, 1959, the expiration date of the original lease. In the court below, they prayed for specific performance of the option contract or, in the alternative, for damages in the sum of $8,000. They also asked judgment against the appellants in the sum of $150 per month as rent actually paid for other living quarters occupied by them during the time that the appellants deprived them of the possession of the premises in question.[2] The appellants answered, denying the claims of the appellees and alleging nonperformance of the lease and option agreement by the appellees, and then cross-complained for certain sums of money they claimed due to them from the appellees in connection with the latters' occupation of the subject premises.

The case was tried to the court sitting without a jury. After hearing the evidence proffered by each side, the court rendered an oral opinion in which it set forth its findings of fact and conclusions of law. The court gave leave, to appellants' counsel, for use of the opinion as the findings and conclusions in the case by having a transcript made of the oral opinion and filed with the court. It appears that counsel took advantage of the leave so granted, for we find no written findings of fact or conclusions of law in the record.

The pertinent findings and conclusions of the trial court, as gleaned from the oral opinion, are set forth below in the order in which they appear in that opinion:

1. The appellees paid to the appellant, Walter Lewis, money in the sum of $600 at the time the earnest money receipt was signed on March 31, 1959.

2. Consideration from the appellees to the appellants for the earnest money receipt consisted of the $600 payment just mentioned and a binding obligation to purchase the leased premises. Under the option agreement, the appellees were not bound "to buy the property at all."

3. The earnest money receipt was sufficiently definite in its terms to constitute a legally enforceable agreement of sale by the appellants (sellers) and of purchase by the appellees (buyers). Any uncertainty or indefiniteness as to the time for the payment of the balance of the purchase price from an FHA secured loan is removed by the fact that it can be made reasonably certain inasmuch as "it is common knowledge that FHA insured loans can be processed in about 90 days to 120 days."

4. The earnest money receipt was an exercise of the option agreement and modified that agreement to the extent that it changed the mode of payment of the purchase price; and on the day of the execution of the earnest money receipt, March 31, 1959, the lease terminated and the appellees became purchasers of the leased premises.

5. The appellants elected not to proceed with reference to the loan, took the position that the option had not been exercised, and demanded that the appellees quit the premises.

6. The $113.25 required for the FNMA commitment fee had to be paid physically by the sellers and would not have been accepted from the buyers. However, "there was no restriction as to where the Defendants [sellers] should get the money to make that payment," and they might even have requested it from the buyers.

7. On July 4, 1959, the appellants wrongfully took possession of the property, which

until after the completion by the seller of any structural corrections required by FHA. In the instant case the FHA gave the appellees a list of nine such corrections that would have to be completed prior to the closing of the loan.

2. One other item of relief prayed for by the appellees was that the court award them damages in the sum of $3,293.73 for alleged conversion by the appellants of certain personal property. This item was disallowed by the trial court and is not an issue on appeal.

has a rental value of "at least $150.00 a month," and have wrongfully retained that possession ever since.

8. The appellees did not abandon the agreement.

On the basis of the foregoing findings of fact and conclusions of law the trial court ruled that the appellees were entitled to a decree calling for specific performance of the agreement for sale of the property. Such a decree in writing was entered and filed on December 1, 1961. Also included in the decree was a provision that, if the appellees desired to secure FHA financing to perform their agreement of purchase,[3] they should have four months' time from the date of the decree in which to pay the purchase price of $15,000, less the following sums: (1) $600 and $800 paid by the appellees as earnest money and as rental money, respectively; (2) $3,900 for rental value of the property from July 4, 1959, to October 4, 1961, and $150 per month thereafter until surrender of possession of the property to the appellees; and (3) $80 for an inconsequential item.

We consider the principal issue in this case to be whether there existed between the parties a contract sufficiently definite and certain in its terms to be specifically enforceable. When we speak of "a contract" or "the contract" in this opinion we are referring to the lease with option to purchase (hereinafter designated option agreement) as supplemented by the earnest money receipt.

■ The appellants first contend that the earnest money receipt was not an exercise of the option agreement and that the trial court committed error in so holding. They insist that the relationship of landlord and tenant was meant to continue until the full purchase price under the option agreement

had been paid. This they say is evidenced by the facts that the appellants made two rent payments after the execution of the earnest money receipt, procured no fire insurance, paid no taxes and performed no other acts indicative of ownership.

We cannot accept such argument for several reasons. In the first place, the "option to purchase" clause in the lease purports a clear intent that the relationship of landlord and tenant between the parties might be terminated before the purchase price had been fully paid and that other arrangements might then be made between the parties for the payment of the balance of the price, after allowance of credit thereon for rentals paid. In that respect the option clause reads:

> "[R]entals paid under the lease as of the date of the exercise of the option shall be applied towards the total purchase price hereinabove set forth. The balance due after applying said rentals as aforesaid shall be payable in cash on such terms and conditions as the parties hereto shall mutually agree upon at the time of exercising said option."

Secondly, the earnest money receipt itself evidences an exercise of the option to purchase and the creation of a contract of purchase and sale, for it recites the receipt from the appellees of $600 "as deposit and part payment of the purchase"[4] of the subject property, which is specifically described, and states that the appellants agree to buy the property for $15,000, "on which sum the above deposit shall apply, the balance to be paid as follows: Balance of purchase price to be obtained from an F H A secured loan[.]" The appellants signed their approval and confirmation of the sale "on the terms and conditions stated."

---

3. The trial court pointed out that, according to the evidence, "FHA insured financing is still available."

4. In McGuire v. Andre, 259 Ala. 109, 65 So.2d 185, at page 190, (1953), the court stated, that "a deposit of part payment

on the purchase price of property on sale to be consummated in the future is 'earnest money.'" See also Monarch Portland Cement Co. v. Wasburn, 89 Kan. 874, 133 Pac. 156 (1913); Weidner v. Hyland, 216 Wis. 12, 255 N.W. 134 (1934) modified, 256 N.W. 244 (1934).

Finally, on this point it is to be noted that both of the appellants in their dealings with the appellees after the execution of the earnest money receipt, seemed to recognize the fact that the appellees had exercised the option, for they testified that about the middle of April and again in May, 1959, the appellee, Jimmie Lockhart, told them individually that he was not going to go through with the purchase and sale. The appellant, Mrs. Lewis, even stated that it was her understanding that the earnest money receipt was to tie in with the lease. That is our understanding, too, and we agree with the trial court that the earnest money receipt constituted an exercise of the option to purchase appended to the lease.

The next point raised by the appellants is that the earnest money receipt, if it may be considered an exercise of the option, is not sufficiently definite and certain to lend itself to specific performance. We have already stated that we consider this to be the main issue in the case. The appellants claim that the uncertainty exists in the fact that no time is set for payment of the purchase price and the agreement does not specify what obligations, if any, each party assumes in the procurement of the FHA loan, or what will happen in the event either party fails to fulfill any such obligations. They testified that they were unfamiliar with FHA financing and did not know that they had to do anything other in the matter than to receive the purchase price.

In Alaska Creamery Products, Inc. v. Wells, this court stated:

"Any contract to be enforcible must be reasonably definite and certain as to its terms. To be final, the agreement must extend to all the terms which the parties intend to introduce and material

terms cannot be left for future settlement. Unless the court has before it ascertainable provisions of an agreement, there is no contract upon which it may act.[5]

In the case at bar the parties first entered into an option agreement for the purchase of the leased premises which provided that the balance due on the $15,000 purchase price "shall be payable in cash on such terms and conditions as the parties hereto shall mutually agree upon at the time of exercising said option."

It seems to be the rule in the majority of jurisdictions which have construed instruments similar to the option agreement under consideration that where the purchase price is fixed but the terms and conditions of payment are to be mutually agreed upon in the future, there is no contract,[6] for the reason that such terms are essential elements of the contract and "since either party by the very terms of the promise may refuse to agree to anything to which the other party will agree, it is impossible for the law to affix any obligation to such a promise."[7]

Applying the foregoing principle of law to this case, we would have to hold that the option agreement could give rise to no legal obligations until such time as the parties might enter into some future agreement which would cure the defects in the original document.[8] However, the parties did enter into such future agreement, namely, the earnest money receipt, which not only effectuated an exercise of the option but also cured the defect in that instrument respecting the time and manner of payment of the purchase price.

The question that remains to be decided is whether the earnest money receipt did

---

5. Opinion No. 95, 373 P.2d 505, 510 (Alaska 1962). See also Hawkins v. Wells, 5 Alaska 535 (D.Alaska, 1916).

6. Roberts v. Adams, 164 Cal.App.2d 312, 330 P.2d 900, 901–902 (1958); Bentzen v. H. N. Ranch, Inc., 78 Wyo. 158, 320 P.2d 440, 441–442, 68 A.L.R.2d 1213

(1958); Annot., 68 A.L.R.2d 1221, 1222, § 2 (1959).

7. 1 Williston, Contracts § 45, at 149–150 (3d ed. 1957); Roberts v. Adams, supra n. 6, 330 P.2d at 902–904.

8. See Ablett v. Clauson, 43 Cal.2d 280, 272 P.2d 753, 756 (1954); 1 Williston, id. at 149.

cure the defects in the option agreement so as to produce a legally enforceable contract. The appellants claim that it did not, for the reason that it left uncertain still the following items: (1) The specific time for payment; (2) the respective obligations of the parties in applying for the FHA loan; (3) the party responsible for certain minor structural changes as required by the FHA; (4) the date possession was to be turned over; (5) the party responsible for the premises after the earnest money receipt was signed; (6) the buyers' status if they failed to comply with the FHA requirements or were unable to procure an FHA loan; (7) the amount of rental to be paid after the final date of payment in the lease; (8) the party responsible for the loss of the property until the passage of title.

Counsel for the appellants cites us to no authority but merely states that he makes the eight points just enumerated

> "for the reason that since the appellants, at least, have never dealt with FHA and were unfamiliar with the procedures of FHA that it was necessary in order for their minds to meet with those of the appellees that the foregoing items should have been specific in any agreement of purchase and sale where the sale proceeds would be derived from an FHA loan."

We find no support for counsel's statement either in the record before us or in any law applicable to the facts of the case and feel justified, therefore, in disposing of the points raised in the same summary fashion in which they were presented.

■ Since the earnest money receipt did not fix the time for payment of the balance of the purchase price, the trial court rightly looked to see if the time could reasonably be made certain.[9] In that respect the court found that "it is common knowledge that FHA insured loans can be

processed in about 90 days to 120 days if financing is available, and if the buyers are good credit risk, and if the property meets FHA requirements" and concluded that the appellees had a reasonable time from the date of the earnest money receipt within which to process the loan and make payment to the appellants. In the decree such "reasonable time" was established at "not to exceed four months."

There is evidence in the record that the appellants had actual knowledge of the respective obligations of the parties in applying for an FHA loan inasmuch as they had received correspondence from FHA informing them of those obligations.

■ As for the other five items which are said by the appellants to constitute uncertainty in the earnest money receipt, we need only say: (1) The lease and option agreement expressly transferred possession to the appellees and the subsequent exercise of the option by the earnest money receipt continued that possession by implication in the appellants to await the transfer of legal title.[10] (2) After the execution of the earnest money receipt the appellants as purchasers, with equitable ownership, were responsible for the premises.[11] (3) Failure of compliance by the appellees with FHA requirements could be treated by the appellants as a breach of the purchase agreement and a proper remedy pursued. (4) The option agreement states that all rentals paid under the lease are to be credited on the purchase price; so there is no uncertainty here to create a problem. (5) The question of responsibility for the loss of the property until passage of title is discussed in (2) above and is also covered by paragraph 8 of the lease which provides for insurance on the property.

There remain to be considered the appellants' last three specifications of error. Two of these attack the trial court's find-

9. Pegg v. Olson, 31 Wyo. 96, 223 P. 223 (1924). See also Kelley v. Ellis, 272 Wis. 333, 75 N.W.2d 569. 76 N.W.2d 540, 56 A.L.R.2d 1267 (1956).

10. Milligan Coal Co. v. Polowy, 97 W.Va. 228, 124 S.E. 674, 679 (1924).

11. Annot., 27 A.L.R.2d 444, 446, § 2 (1953) and cases there cited.

ings: (1) that the appellees when they signed the earnest money receipt on March 31, 1959, paid $600 to the appellants, and (2) that the appellees had not abandoned the purchase agreement; while the third questions the court's allowance of $150 per month as rental to the appellees for the time during which possession of the premises was withheld from them by the appellants.

In connection with the court's findings there was sufficient evidence presented by both parties to establish certain questions of fact which had to be decided. These the court decided in favor of the appellees by its findings. We perceive no such clear error in those findings as would require us under our rules of civil procedure[12] to set them aside.

Nor do we find any error in the rental award of $150 as credit on the purchase price. The award is based upon the findings by the lower court that the appellants wrongfully took possession of the leased premises on July 4, 1959; that they have wrongfully retained possession ever since; and that the property has a monthly rental value of $150. We have already demonstrated herein that the appellees were in rightful possession of the property at the time of their ouster. On the question of rental value it might be argued that the parties by the terms of the lease fixed the fair rental value at $200 per month; and that is also the amount fixed by the appellants in their counterclaim. However, the appellee, Jimmie Lockhart, testified that he felt the sum of $150 to be fair and equitable since that was the amount of rent he had to pay for other living quarters after the ouster.

We hold that the purchaser is entitled to a decree of specific performance; but in order that complete justice may be done in the premises we must take into account any benefits that the appellants may have conferred upon the appellees with respect to the purchase and sale of the subject property during the time that the latter were kept out of possession. These would be limited in this case to interest on the purchase price, and taxes, insurance and ordinary repairs on the property paid for by the appellants.[13] If the appellants are to be allowed interest on the purchase price, then the appellees are entitled to a stricter accounting of the actual rental value of the property than was had below. Of course, the appellees have the right to waive all rents that might be due them from the appellants and thus relieve themselves of the obligation of paying interest on the purchase price.[14]

Since the record before us is not sufficient to enable us to make the requisite adjustment of equities between the parties, the case is remanded to the trial court with directions to make the accounting called for by this opinion and enter judgment accordingly.

So ordered.

12. Civ.R. 52(a) provides, in part that "[f]indings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

13. Brewer v. Sowers, 118 Md. 681, 86 A. 228 (1921); Harper v. Battle, 180 N.C. 375, 104 S.E. 658, 660, 20 A.L.R. 357 (1920); Gage v. Leslie, 123 Kan. 72, 254 P. 362, 364 (1927); Lidikevicz v. Kopala, 315 Ill. 404, 146 N.E. 461 (1925); Abrahamson v. Lamberson, 79 Minn. 135, 81 N.W. 768 (1900); Annot., 7 A.L.R. 2d 1204, 1218–1219, 1226–1229, §§ 7, 10, 11, 13, 15 (1949).

14. Leafgreen v. La Bar, 300 Pa. 369, 150 A. 656, 75 A.L.R. 312 (1930); Annot., 7 A.L.R.2d 1204, 1218–1219, § 7.