[Civ. No. 8136. Fourth Dist., Div. One. Jan. 3, 1967.]

JEN-MAR CONSTRUCTION COMPANY, Plaintiff and Appellant, v. ARNOLD S. BROWN et al., Defendants and Appellants.

Anderson, McPharlin & Conners and Robert C. Haase, Jr., for Defendants and Appellants.

Hillyer, Crake & Irwin and Richard Crake for Plaintiff and Appellant.

FINLEY, J. pro tem.* — This appeal is by defendants Brown, as principal, and United States Fire Insurance Company, as surety, from a judgment against them in favor of plaintiff Jen-Mar Construction Company for $33,262.47. Jen-Mar also noticed an appeal from that part of the judgment "denying plaintiff's right to recover legal fees in the amount of $12,069.76." As part of his pleadings, Brown filed a cross-complaint which the court found to be without merit.

To simplify the discussion the parties shall be referred to as "Jen-Mar," "Brown" and "Surety."

Jen-Mar contracted with the U. S. Corps of Engineers to construct a missile assembly building at Vandenburg Air Force Base, and sublet certain earthwork to Brown. The subcontract, dated March 23, 1962, provided in part:

"It is mutually agreed that any and all work completed for the Sub-Contractor [Brown] by the Contractor [Jen-Mar] will be based on a mark-up of 15% General Overhead and 10% Profit, above all costs incurred by the Contractor."

"[Sub-Contractor agrees] not to assign this contract or sublet the same, or any part thereof . . . without first obtaining the written consent of the Contractor."

"[Sub-Contractor agrees] that in case the Sub-Contractor . . . shall fail to complete or diligently proceed with this contract . . . the Contractor upon three days' notice to the Sub-Contractor shall have the right . . . to take over this

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

contract and complete same, and to charge the cost thereof to the Sub-Contractor.''

''That if notification of any claims have been made against the Sub-Contractor or the Contractor arising out of labor or materials furnished the project covered by this agreement, or otherwise on account of any actions or failures to act by the Sub-Contractor . . . the Contractor may, at his discretion, withhold such amounts otherwise due.''

''. . . in the event of a dispute with respect to payment . . . the right of the Sub-Contractor to such payment will be subject to the determination of the Contracting Officer. . . .'' The subcontract also required Brown to deliver a surety bond. The bond was executed and delivered by Surety and required Jen-Mar to : ''. . . retain that portion, if any, which the sub-contract specified the Obligee [Jen-Mar] shall or may retain of the value of all work performed . . . .'' The bond also provided : ''That in the event of any default on the part of the Principal [Brown], written statement of the particular facts showing such default and the date thereof shall be delivered to the Surety . . . promptly and in any event within ten (10) days after the Obligee [Jen-Mar] or his representative, if any, shall learn of such default . . . .''

This bond was supplemented or superseded by another executed on April 24, 1962 which deleted the requirement of notice.

Brown commenced work on the project on March 27, 1962, and continued until he went into bankruptcy on June 29, 1962. During this period, the Corps of Engineers complained to Jen-Mar about the quality of Brown's work. Also, Brown failed to meet the contractor's progress schedule. He presented Jen-Mar with his first monthly progress billing for percentage of work done in amount of $15,047 on April 13, 1962. After he revised it downward to $6,450 net, Jen-Mar paid it. In early May 1962, Jen-Mar notified Brown he had insufficient equipment on the job and his creditors were complaining about unpaid bills. As of May 7, 1962, Brown had assigned his accounts receivable without Jen-Mar's consent to Standard Factors. He submitted his second monthly progress billing for $29,887.30 on May 14, 1962. Jen-Mar initially refused to pay this. On June 14, 1962, Brown notified Jen-Mar of the cancellation of the assignment to Standard Factors. On June 15, 1962, Brown submitted his third billing. On June 21, 1962, Brown notified Jen-Mar of an assignment of accounts receivable to Sierra Financial Company. Jen-Mar received payment

from the government to cover the third billing on June 27, 1962, two days before Brown's bankruptcy.

Upon Brown's bankruptcy, Jen-Mar proceeded alone and by subcontract to complete Brown's work.

Brown and Surety assign five points of error as follows: "1. Where the Surety's bond specified as a condition precedent to recovery thereon, that the obligee give 10 days written notice of any default on the part of the subcontractor, failure to give such notice—or any notice—for over two months while withholding all progress payments earned by the subcontractor due to alleged defaults, exonerates the Surety.

"2. If Brown was not in default, then Jen-Mar wrongfully withheld his monthly progress payments, exonerating the Surety and justifying Brown in abandoning the work.

"3. The charges against Brown's subcontract balance allowed by the court are excessive because they in large part do not relate to structural excavation which was virtually the only work retained by Jen-Mar after reletting the balance of the A. S. Brown work.

"4. Overhead and profit should not have been awarded on claims arising from Brown's work. That allowed was excessive, and in any event, the defendant Surety was not liable for overhead and profit under the terms of its bond.

"5. The error in setting grade stakes on the job was Jen-Mar's and the cost of removing the surplus dirt in the building resulting therefrom was improperly charged to A. S. Brown and his Surety."

*Point 1:*

Surety contends that Jen-Mar should have given it notice within 10 days after its refusal to pay Brown's second monthly billing. Jen-Mar argues that there was only a delay for purposes of giving it time to investigate; that the original bond required notice to the surety only in case of *default* and not upon each minor incident or departure from narrow interpretation of the instruments. It argues that "default" means abandonment, repudiation of the duty to perform, failure of performance, or substantial breach which cannot be remedied *(Bradbury* v. *Thomas,* 135 Cal.App. 435, 443 [27 P.2d 402]); that Brown's failure to have sufficient equipment on the job was remedied; that assignment of the accounts receivable was not required to be recognized by Jen-Mar; that the bond itself required Jen-Mar to retain funds if creditors were unpaid and that Jen-Mar merely withheld payment to Brown for a sufficient period to make an investigation of the obligations.

Jen-Mar argues that Brown's claim that this temporary withholding rendered him unable to carry on is speculation, for among other things Brown had factored his accounts receivable. Jen-Mar urges that Brown's first default was his bankruptcy, of which Surety had timely notice.

Thus it will be seen that this court is being asked primarily to reweigh the evidence and arrive at conclusions contrary to those of the trial court. We are not bound by that court's interpretation of the written instruments involved. (*Nicholson* v. *Wade,* 236 Cal.App.2d 442, 447 [45 Cal.Rptr. 911]; *Noel* v. *Dumont Builders, Inc.,* 178 Cal.App.2d 691, 699 [3 Cal.Rptr. 220]; *Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825]; *Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423, 429-430 [296 P.2d 801, 57 A.L.R.2d 914].) But where there is any substantial evidence to support its findings predicated upon nondocumentary evidence, we cannot, outside of some obvious abuse of reason and discretion, substitute our findings and conclusions for those of the trial court. (*Berniker* v. *Berniker,* 30 Cal.2d 439 [182 P.2d 557]; *Primm* v. *Primm,* 46 Cal.2d 690 [299 P.2d 231]; *Citizens Suburban Co.* v. *Rosemont Dev. Co.,* 244 Cal.App.2d 666, 682 [53 Cal. Rptr. 551].)

Here some of the questions involved depend not so much upon the interpretation of the instruments as upon a finding whether the parties in the course of their activities thereunder performed within reasonable limits. The principals here were both engaged in the construction business and therefore must have entered into their contract in the light of knowledge of pertinent practices or customs. Surety, a professional in the field of surety bonds, is charged with an awareness of such practices as are reasonably common in the field in which it issues bonds. It cannot prevail in its contention that regardless of capability of remedy, each departure from a strict construction of the terms must necessarily be interpreted by Jen-Mar as a default entitling Surety to notice, if indeed any were required by reason of the posting of the second bond.

The trial court found in part that Surety ". . . was not prejudiced in any way as a result of notice or as a result of any failure of plaintiff [Jen-Mar] to give information to said defendant [Surety] concerning the financial status of the defendant Arnold S. Brown." The court also found that Jen-Mar was not at any time in possession of information concerning Brown's financial status or the performance of the subcontract which would give rise to a duty to inform Surety.

It further found that by an amendment to the original bond Surety had waived any requirement of notice.

There is ample evidence in the record to support these findings. Beyond this determination we need not go. ■ ''When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.'' [*Primm* v. *Primm,* 46 Cal.2d 690, 693 [299 P.2d 231].]

*Point 2*:

■ As respondent points out in discussion of this point concerning the withholding by Jen-Mar of Brown's progress payment, Brown did not at any time give notice to Jen-Mar that he regarded this as a breach of the subcontract. He gave no notice of an election to renounce the contract nor did he take any steps to submit the point for determination of the United States Contracting Officer as provided in the contract. Thus it appears that Brown did not consider himself to be in default; that Jen-Mar did not consider Brown to be in default and that Brown did not consider Jen-Mar to be in default of its obligation under the subcontract thus warranting abandonment. The trial court found that, ''The plaintiff at all times performed and complied with all of the terms and conditions of the sub-contract and the bond . . . and the amendment to the bond.''

The evidence supports this finding.

*Point 3*:

We find appellants' claim that the trial court awarded excessive back charges against Brown to be without merit. Here again we are asked to reweigh the evidence and differ in conclusion with the trial court. In reviewing the record we find ample evidence to support the trial court's determination. ■ Insofar as there is a difference in figures between the findings and judgment, the findings must control. The figure announced in the findings is $33,262.47. In the judgment it is $33,558.48. It is therefore ordered that the judgment figure be amended to $33,262.47.

*Point 4*:

Whether the ''overhead'' and ''profit'' items were properly allowed devolves primarily upon an interpretation of the subcontract.

The pertinent provisions of the subcontract are quoted above. The bond condition is as follows:

"Now, THEREFORE, the condition of this obligation is such that if the Principal shall indemnify the Obligee *against loss or damage directly caused* by the failure of the Principal to faithfully perform said sub-contract, and by failure of the Principal to pay the claims of all persons performing labor upon or furnishing materials to be used in or furnishing appliances, teams or power contributing to such work, then this obligation shall be void; otherwise to remain in full force and effect." [Italics added.]

Appellants point to Civil Code, sections 3300 and 3359 as guidelines for measuring damages arising from breach of contract and to *Boat & Barge Corp.* v. *Beverly etc. Co.,* 71 Cal.App.2d 800 [163 P2d 913], on the point of overhead or indirect costs. We find nothing therein in conflict with the overhead and profit award on items set forth in the court's findings. Appellants claim that the $1,115.86 paid to Brown's creditors and the $342.72 bond premium paid to one Allen Jayne were inappropriate items upon which to allow overhead and profit as these do not appear to be items envisioned under the terms of the subcontract as profit items or as "costs incurred by the contractor" or "work completed for the subcontractor by the contractor." However, appellant has not demonstrated that these items were actually included and from a review of the findings it does not appear that the trial court included them in the schedule set forth in its findings. We find that it acted within the purview of the subcontract in awarding the percentages of 15 percent overhead and 10 percent profit on the items enumerated in the schedule set forth. Where no abuse of discretion is found we could not, even though so disposed, properly substitute the discretion of this court for that of the trial judge. Overhead and profit items are no less a direct expense merely because they are less capable of direct proof. Under provisions of the bond they fall within the Surety's liability.

*Point 5:*

Resolution of the question of error in setting grade stakes depended entirely upon testimony and evidence outside an interpretation of the contract or bond. There is ample evidence to support the trial court's findings.

*Attorney's Fees:*

We turn now to Jen-Mar's appeal from that portion of

the judgment disallowing its claim of $12,069.76 as attorney fees expended in prosecuting the instant case. The provision in the subcontract relied upon as spawning this claim reads as follows: "VI. To pay for any *expense* the Contractor or any other sub-contractor may suffer as a result of the Sub-Contractor's failure through causes within said Sub-Contractor's control to carry out the provision[s] [*sic*] of this agreement." [Italics added.]

As authority in support of its claim Jen-Mar refers us to the following language in *Flora* v. *Aetna Cas. & Surety Co.*, 207 Cal.App.2d 376, 380 [24 Cal.Rptr. 305]: "Attorney fees have been allowed on construction contract bonds where they are rendered in good faith and were reasonably and proximately caused by the breach of the construction contract. (*Tally* v. *Ganahl*, 151 Cal. 418, 423, 424 [90 P. 1049]; *Bird* v. *American Surety Co.*, 175 Cal. 625, 631 [166 P. 1009]; *Cohn* v. *Smith*, 37 Cal.App. 764, 767, 768 [174 P. 682].)"

In reviewing the *Flora* case, however. we find the attorney fees allowed by the trial court were not necessarily fees incurred in the handling of that case, but might well have been previously incurred for other purposes related to the contract. The opinion does not make the point clear. The court did not necessarily predicate its decision upon the point discussed in the above excerpt from its opinion. The final statement in the opinion is as follows: "The appellant has failed to state any evidence to the contrary and its brief does not make any appropriate reference to the record, as required by California Rules of Court, rule 15(a). . . . Thus appellant has not established grounds for reversal." (Page 380.)

In *Tally* v. *Ganahl, supra,* cited in the *Flora* opinion, Tally was principal and Ganahl surety. The judgment against the surety included $100 attorney fees incurred by Tally in protecting her interests against liens filed against her premises. They were not for attorney fees incurred by her in prosecuting the action against Ganahl.

In *Bird* v. *American Surety Co., supra,* 175 Cal. 625, 631, the court said: "The rentals lost by delay in completion and the attorneys' fees incurred in defending against suits were proper charges in favor of the owner against the contractor, and against the Surety Company, . . ."

■ A review of the case discloses that the attorney fees referred to were incurred at a prior time in the handling of a defense against liens. The same may be said of *Cohn* v. *Smith, supra,* 37 Cal.App. 764, 767-768.

Attorney fees are not generally held to be the loser's obligation unless created by contract or expressly provided by statute. (Code Civ. Proc., § 1021; *Reid* v. *Valley Restaurants, Inc.*, 48 Cal.2d 606, 610 [311 P.2d 473]; *Viner* v. *Untrecht*, 26 Cal.2d 261, 262 [158 P.2d 3]; *Williams* v. *Krumsiek*, 102 Cal.App.2d 541, 545 [227 P.2d 889]; *American Aeronautics Corp.* v. *Grand Central Aircraft Co.*, 155 Cal.App.2d 69, 83 [317 P.2d 694].) ■ Here it is claimed by Jen-Mar that the obligation arises under the provisions of the subcontract which the surety bond incorporates, thus creating the obligation by contract. An analysis of the terms of the two instruments leads us to agree. Appellants call attention to the phrase "within subcontractor's control" appearing in paragraph VI of the subcontract quoted above, but offer no analysis of any possible effect here as a qualification. They do maintain that the term "expense" does not include attorney fees in the sense that it is used in the subcontract.

Referring to the words "within subcontractor's control," when the surety succeeded to the obligations of the subcontractor it became a party to any effect of that qualification. The decision whether to perform or litigate lay within the *control* and became, primarily, the decision of Surety. Brown and Surety having been found in the wrong in refusing to perform the obligations of the subcontract, reason would dictate that Jen-Mar's expense in employing attorneys to enforce its rights was an expense suffered through "causes within subcontractor's [and Surety's] control."

■ A contract may impliedly as well as expressly permit recovery of attorney fees in the event of suit to enforce the contract. (*Anger* v. *Borden*, 38 Cal.2d 136 [238 P.2d 976]; *Arthur B. Siri, Inc.* v. *Bridges*, 189 Cal.App.2d 599, 603 [11 Cal.Rptr. 322]; *Citizens Suburban Co.* v. *Rosemont Dev. Co., supra,* 244 Cal.App.2d 666, 683.) But attorney fees cannot be allowed a successful litigant without *pleading* and proof that there is a statute or contract provision covering them. (*Genis* v. *Krasne*, 47 Cal.2d 241, 246 [302 P.2d 289]; *Citizens Suburban Co.* v. *Rosemont Dev. Co., supra.*)

■ In the instant case pleaded and proven attorney fees, incurred by Jen-Mar in litigating claims prior to the bringing of this action, were allowed by the trial court. But Jen-Mar did not specifically plead its claim to attorney fees to be incurred in the prosecution of the instant action. Neither was this claim specifically set out as an issue in the pretrial order. The prayer of the complaint contains a request for

"Reasonable attorneys fees and costs," which does not satisfy the pleading requirement.

The trial court found that: "These legal fees ($12,069.76) are reasonable and were necessarily expended by the plaintiff. However, the plaintiff is not entitled to recover the same since there is no legal basis contractually or otherwise for the recovery of these fees." We disagree with this finding insofar as it finds that "there is no legal basis *contractually*" for recovery, but we agree that "there is no legal basis . . . otherwise." Defendants were entitled to defend and therefore to be apprised through specific pleading of any such claim. Since the complaint is deficient in this respect plaintiff cannot recover this item.

The judgment is affirmed with instruction to the trial court to amend the judgment figures to $33,262.47 to correspond with the figure set forth in the findings. Each party to bear own costs on appeal.

Brown, P. J., and Coughlin, J., concurred.

On January 5, 1967, the judgment was modified to read as printed above.