[L. A. No. 6538.  In Bank.—August 23, 1921.]

## J. A. BUCKMASTER, Respondent, v. ELSIE MAY BERTRAM, Appellant.

[1] SPECIFIC PERFORMANCE—CONTRACT FOR SALE OF LAND—PAYMENT OF PRICE—LACK OF CERTAINTY AND DEFINITENESS.—A written contract for the sale of land providing for the payment of the stated price to the vendor "at the times and in the manner hereinafter mentioned," to wit: "in the form of a mortgage payable to S. M. Skillman (not the vendor), and due April 3, 1919, or two years and six months from date of the contract, with seven per cent interest per annum, payable semi-annually," is too indefinite and uncertain as to the payment of the price to be enforceable by way of specific performance.

[2] ID.—PLEADING—PAYMENT OR TENDER OF PRICE—ESSENTIAL ALLEGATIONS.—In an action by a vendor to cancel a contract for the sale of land, a cross-complaint for specific performance which does not show that the vendee ever paid or offered to pay the purchase price, or that she is willing to pay the same if specific performance should be decreed in her favor, is insufficient.

[3] ID.—REPUDIATION BY VENDOR—WILLINGNESS OF VENDEE TO PAY—ESSENTIAL ALLEGATION.—While the positive repudiation of a contract of sale by the vendor excuses the vendee from a formal tender of the price as a condition precedent to an action for specific performance, it does not obviate the necessity of the state-

———

3. Payment or tender of purchase price as condition precedent to right of purchaser to specific performance, notes, 4 Ann. Cas. 852; Ann. Cas. 1913C, 647.

ment in the complaint that the vendee is ready, able, and willing to pay the amount due from him, and such requisite is not complied with by an offer to pay the amount due after deducting the damages to the vendee, from the refusal of the vendor to perform, from the amount of the purchase price unpaid.

[4] VENDOR AND VENDEE—DEFAULT OF VENDOR—REMEDIES.—Where the vendor refuses to perform, the vendee may sue for specific performance, or for damages for the refusal, but the remedies are inconsistent, and if one is chosen the other is deemed to be abandoned wherever the change of remedy would occasion an injury to parties adversely interested in the matter, such as vendees subsequently purchasing from the vendor.

APPEAL from a judgment of the Superior Court of Orange County, and from an order denying a motion to vacate and enter a different judgment. R. Y. Williams, Judge. Affirmed.

The facts are stated in the opinion of the court.

Eden & Koepsel for Appellant.

Lee Utley for Respondent.

SHAW, J.—The defendant appeals from the judgment and from an order denying her motion to vacate said judgment and enter a different judgment on the findings.

The complaint alleges that on October 3, 1916, the plaintiff and defendant executed a contract in writing, whereby plaintiff agreed to sell and convey to the defendant and the defendant agreed to buy five parcels of land in the Newmark tract, in Orange County, "for the sum of one thousand and no/100 dollars, of the United States, and the said party of the second part (Bertram), in consideration of the premises, agrees to pay at the times and in the manner hereinafter mentioned, to the said party of the first part (Buckmaster) the sum of one thousand and no/100 dollars, as follows, to wit: In the form of a mortgage payable to S. M. Skillman, and due April 3, 1919, or two years and six months from date of the contract, with seven per cent interest per annum, payable semi-annually."

The contract provided that upon her failure to comply with the terms of the contract the plaintiff should be released from all obligation in law or equity to convey the property

and the defendant should forfeit all right thereto. The deed was to be made "on receiving such payments at the time and in the manner above mentioned."

The prayer of the complaint was that the contract be canceled; that the defendant's title, interest, and estate to the property be "adjusted" as subordinate to the plaintiff's title, and that the defendant "be forever disbarred" from asserting any claim or title to the property.

The defendant filed a cross-complaint, which was afterward superseded by a second amended cross-complaint. The second amended cross-complaint asked that the court state an account between the parties and give the defendant a reasonable time to redeem the same; for judgment against the plaintiff for any balance found due on the accounting, and for specific performance of the contract on payment by the defendant of the amount found due from her, or, if it is found impossible for the plaintiff to perform his agreement, then for damages against plaintiff in the sum of two thousand dollars. The cross-complaint alleged the contract set up in the complaint, that on April 9, 1918, plaintiff gave notice to the defendant that he had decided to cancel the contract and that the plaintiff has ever since refused to perform said agreement and that plaintiff had informed defendant that he had disposed of one of said lots. It is alleged that the property had greatly increased in value and was at the time of the filing of the cross-complaint worth four thousand dollars.

The findings state that the agreement alleged in the complaint was executed by the parties; that plaintiff had given notice to defendant that he had sold some of the lots and had concluded to cancel the agreement; that defendant had not paid anything upon said contract; that on April 1, 1919, the lots were of the value of two thousand five hundred dollars; that defendant was not entitled to specific performance because of the fact that her first cross-complaint did not claim the right of specific performance and that after the filing thereof the plaintiff had sold parts of the property to *bona fide* purchasers because of defendant's failure to claim the right of specific performance in her first cross-complaint, and that by so doing she had waived that right and was confined to her claim for damages for the refusal of the plaintiff to perform the contract. The findings declare

that the defendant is damaged in the sum of nine hundred dollars by the refusal of the plaintiff to perform. Judgment was given declaring that the defendant was estopped from seeking specific performance of the contract and that she recover of plaintiff the sum of nine hundred dollars as damages; that upon payment thereof by plaintiff all adverse claims of the defendant be declared invalid and groundless and the plaintiff and his grantees be declared to be the owners of said property and have their titles quieted as against all claims of the defendant.

[1] On its face the agreement is too uncertain to be enforceable by way of specific performance. "It is elementary that specific performance will not be enforced unless the contract not only contains all the material terms, but also expresses each in a sufficiently definite manner. In Pomeroy on Contracts (section 159) it is said: 'An uncertain contract . . . may perhaps embrace, in a partial manner, all the material terms, but on account of the inexact, indefinite, or obscure language in which one or more of them is stated, it fails to express the intent of the parties with sufficient clearness to enable a court of equity to enforce its provisions. The specific performance of an agreement, thus uncertain, will not be decreed.' As said in 26 American and English Encyclopedia of Law (second edition, page 33): 'The contract sought to be enforced must, at all events, be so certain that its meaning can be ascertained, as an indefinite contract cannot be enforced, because the courts do not know what the parties agreed. The meaning and intent of the parties should be placed beyond the bounds of mere conjecture by full and clear proof.' " (*Reymond* v. *Laboudigue,* 148 Cal. 694, [84 Pac. 190].)

The terms of the contract as to the payment of the price are so indefinite and uncertain that its meaning cannot be ascertained. The price is definitely stated to be one thousand dollars, but the agreement of the defendant to pay such price is qualified and limited by the statement that it is to be paid "at the times and in the manner hereinafter mentioned," which time and manner are declared to be as follows, to wit: "In the form of a mortgage, payable to S. M. Skillman, and due April 3, 1919, . . . at seven per cent interest per annum, payable semi-annually." Does this mean that the defendant is to cause a mortgage, payable to Skill-

man, to be transferred or assigned to the plaintiff, who is to
accept it as payment of the one thousand dollars, and imme-
diately execute to her a deed, which, as appears later in the
contract, is to be made "on receiving such payments, at the
time and in the manner above mentioned"?   Or is the de-
fendant herself to execute a mortgage payable to Skillman
for one thousand dollars, or some other sum, which is in
some unexplained manner to inure to the benefit of the plain-
tiff and to operate as payment of the price?   If our first
guess is correct, what is the amount of the Skillman mort-
gage?   If either guess is correct, what land or personal property
is covered or to be covered by the proposed mortgage?   If the
Skillman mortgage was in existence at the time, who was the
mortgagor?   And if it was for more than one thousand dol-
lars, was its full payment necessary to constitute the pay-
ment of "said price," or would a payment of a thousand
dollars thereon suffice to accomplish that purpose, and when
was such payment due?   The execution of the mortgage to
Skillman by some person other than the defendant and on
other property than that described in the agreement of sale
would come within the terms of the agreement as to the pay-
ment of the price.   Was such performance within the intent
of the parties?

The agreement answers none of these questions.   Nor is
any answer shown by the pleadings or findings.   Possibly
extrinsic facts might be proven which would render the con-
tract sufficiently certain to enable a court of equity to decree
its specific performance.   But there are no allegations either
in the complaint or in the cross-complaint, nor any state-
ments in the findings, relating to any such extrinsic facts
or indicating what they may be, and no solution of the mean-
ing of the contract in the respects indicated is possible from
anything contained in the judgment-roll.   On the face of the
record, therefore, the defendant is not entitled to a specific
performance.

[2]   The cross-complaint is insufficient for another rea-
son.   It does not show that the defendant ever paid or
offered to pay the purchase price, or that she is willing to
pay the same if specific performance should be decreed in
her favor.   She alleges that she has been damaged in the
sum of four thousand dollars by the alleged repudiation of
the contract by the plaintiff and certain other alleged

breaches thereof, and that she is ready, able, and willing to perform the contract on her part ''upon statement of an account by the court of the amount, if any,'' which she ought to pay to the plaintiff, and she prays for an accounting and that a reasonable time be given her in which to pay any balance ''found due on such accounting.'' The only accounting shown to be necessary is the ascertainment of the difference between the purchase price and the damages alleged. [3] While the positive repudiation of a contract of sale by the vendor excuses the vendee from a formal tender of the price as a condition precedent to an action for specific performance, it does not obviate the necessity of stating in his complaint in such action that he is ready, able, and willing to pay the amount due from him. This requisite is not complied with by an offer to pay the amount due after deducting the damages to the vendee, from the refusal of the vendor to perform, from the amount of the purchase price unpaid. The vendee cannot seek damages for the refusal and specific performance in a single cause of action.

Furthermore, the findings show that the first cross-complaint of the defendant sought damages from the plaintiff by reason of his repudiation of the contract and did not ask specific performance, and that during the interval between the filing of the first cross-complaint and the filing of the second amended cross-complaint, seeking specific performance, the plaintiff, relying upon defendant's election of remedy, had made sales of some of the lots, which the purchasers had bought, also relying upon such election. [4] Where the vendor refuses to perform, the vendee has two remedies,—that is, either to sue for specific performance or to sue for damages suffered from the refusal. These remedies are inconsistent and the vendee cannot have both, and if one is chosen the other is deemed to be abandoned wherever the change of remedy would occasion any injury to parties adversely interested in the matter. (*McGibbon* v. *Schmidt*, 172 Cal. 75, [155 Pac. 460].) The findings show that both the plaintiff and his subsequent vendees would be injured by allowing the defendant to maintain the action for specific performance set up in her last amended cross-complaint. It was for this reason that the court below allowed her damages and refused specific performance. Under the circumstances she has obtained all that she is entitled to, and perhaps more.

The notice of appeal purports to state that the defendant appeals from the order denying her motion to vacate the judgment and render a different judgment on the findings. The record does not show that she ever gave notice of any such motion, nor does anything appear from which we can determine the form of judgment which she desired to have entered upon the findings. No error in this respect is made to appear.

The judgment and order are affirmed.

Sloane, J., Shurtleff, J., Lennon, J., and Wilbur, J., concurred.