[Sac. No. 4491. In Bank.—February 29, 1932.]

## MARIPOSA COMMERCIAL AND MINING COMPANY (a Corporation), Respondent, v. D. L. PETERS et al., Appellants.

Tanner, Odell & Taft for Appellants.

Chas. W. Slack and Edgar T. Zook for Respondent.

THE COURT.—Defendants appeal from a judgment in favor of plaintiff to quiet the title and to remove clouds from the title to certain real property in Mariposa County. It would serve no useful purpose to set forth in full the various complicated transactions between the parties hereto ultimately resulting in this action. For the purposes of this opinion the following summary is sufficient:

The complaint alleges that on January 19, 1928, the plaintiff and defendant Peters made and executed an indenture of lease and option dated as of January 15, 1928, whereby the plaintiff leased to Peters for a period of five years certain described parcels of real property in Mariposa County. The lease, which is pleaded as an exhibit to the complaint, provided for monthly payments of $1,000 each on the fifteenth day of each month, and likewise provided for an additional cash payment of $17,913.80 to be paid by Peters to plaintiff on or before March 15, 1928, together with interest thereon. Peters was also given an option to purchase the premises for the sum of $570,000, with interest, any time before November 30, 1929, providing notice of election was given to plaintiff not later than November 25, 1929. The right to exercise the option was expressly made dependent upon the lessee not being in default of any of the terms and conditions of the lease, including the payment of rent. It was also provided that in the event the lessee shall fail to exercise the option "strictly at the time and in the manner hereinabove provided for" or in the event of having exercised the option and then failing to pay the purchase price at the time and in the manner provided "the said times and manner being of the very essence of the said option", the option shall terminate. The complaint alleges that on January 17, 1928, Peters assigned the lease and option to defendant Fremont Grant, Inc.; that on June 4, 1928, the assignee caused the assignment to be recorded; that on August 17, 1928, the plaintiff assented in writing to the assignment; that among the parcels of land described in the lease were eleven parcels of land which plaintiff had purchased at a foreclosure sale but which at the time of the execution of the lease and option were still subject to redemption; that on January 11, 1929, the owners not having redeemed the same, plaintiff secured a court deed to these eleven parcels; that thereupon

these parcels, under the terms of the lease and option, became subject to the same. It is then alleged that defendants failed to pay the installments of rent for the months of July to December, 1929; that demand was made for delinquent installments on August 20, 1929; that on December 17, 1929, plaintiff notified defendants that unless payment was made by December 23, 1929, plaintiff elected to terminate the lease; that defendants failed to make such payments and the lease therefore terminated. It should be here mentioned that the lease provided that time was ''of the very essence of each and all of said payments'' of rent, and that failure to make such payments would, at the election of plaintiff, terminate the lease.

The complaint then alleges that defendant Fremont Grant, Inc., attempted to give notice of election to exercise the option by letter, but that such letter was not received prior to November 25, 1929; that at the time of such purported election defendants were in default in payments of rent; that defendants failed to tender the purchase price of $570,000 by November 30, 1929; that for the foregoing reasons the option was never exercised and has terminated; that defendants claim some interest in the property, which claim is without merit. Plaintiff prayed that the lease and option be declared terminated and that Fremont Grant, Inc., be compelled to surrender the lease and option and the assignment to the court for cancellation.

Both defendants answered the complaint. The execution of the lease and option was admitted, but it was alleged that the parties modified the lease and option by a subsequent agreement in reference to the eleven parcels mentioned in the complaint. It was alleged that by the terms of this modifying agreement defendants had the right to purchase these eleven parcels separately from other lands described in the lease and option; that the purchase price of these eleven parcels was to be $17,913.80 in cash, and a note and deed of trust for $100,000; that defendants made the cash payment and offered to execute a note and deed of trust for the balance, but plaintiff has refused to execute a deed to these eleven parcels in conformance with the agreement of the parties. Defendants also denied that they defaulted in the payment of rent and alleged that plaintiff secured certain rentals from subleases which plaintiff under

the terms of the lease and option should have applied to rentals due from defendants, but that plaintiff refused to so apply the rentals. It is also alleged that defendant Fremont Grant, Inc., properly and in accordance with the option provisions, exercised the option to purchase all the properties leased. Fremont Grant, Inc., for itself alone, cross-complained, asking for specific performance of the alleged modifying agreement in reference to the eleven parcels, and likewise alleging that it had exercised the option to purchase the entire properties and that by reason of the refusal of plaintiff to perform it had been damaged in the sum of $178,405.68. The allegations of the cross-complaint were denied by plaintiff.

On the issues thus formed the case proceeded to trial before the court without a jury. The court found the facts to be substantially as set forth in the complaint, and rendered judgment in favor of plaintiff on all the issues. Defendants prosecute this appeal mainly on the ground that many of the findings are not supported by the evidence.

The first contention is that the stockholders of plaintiff corporation should have been made party plaintiffs. This contention is based on the following facts: At the trial it developed that on January 15, 1928 (the date of the lease and option), Peters entered into an agreement with the stockholders of plaintiff corporation to purchase from them their respective holdings of stock in plaintiff corporation for $250 per share, making the total purchase price $570,000. It likewise appeared that on January 15, 1928, this stock purchase agreement was the main agreement between the parties, and that the lease and option had been executed for the convenience of Peters in order to assist him in getting the stock of Fremont Grant, Inc., listed on the New York curb market. Based on these facts, appellants contend that the stockholders, being interested under the stock purchase agreement, and that agreement being the principal agreement, they should have been made party plaintiffs. This contention is without merit. Although at the inception of the transaction the stock purchase agreement may have been the principal contract in reference to the acquisition of the corporate properties by Peters, the evidence conclusively shows that almost immediately after January 15, 1928, Peters and his assignee abandoned the stock purchase con-

tract and proceeded to act under the lease and option, and to treat it as the principal contract. No payments were ever made under the stock purchase agreement, all the payments being made under the lease and option; when Peters assigned the lease and option to Fremont Grant, Inc., he did not assign the stock purchase agreement; all the acts of Fremont Grant, Inc., were performed under the lease and option, including the attempt to exercise the option in November of 1929. These and many other facts, not necessary to here mention, clearly indicate that the stock purchase contract had been abandoned by the defendants. Moreover, even if this were not the fact, it does not appear how the stockholders should be parties to this present action. This action is to quiet the title and to remove clouds from the title of certain real property owned by the corporation, not the stockholders. The claims of defendants which are sought to be quieted are based on the lease and option, to which contract the stockholders were not parties. Such being the case the stockholders of plaintiff corporation could not be made party plaintiffs to this action. The stock purchase agreement in no way constituted a cloud on the title to the real property owned by the corporation. The fact that the stockholders had entered into a contract to sell their stock to Peters does not change the fact that the corporation was not a party to that contract but was solely interested in the lease and option to which the stockholders were not parties. It is obvious, therefore, that the present action to quiet the title of the corporation against claims based on the lease and option had to be brought in the name of the corporation and not in the name of the stockholders. (*Favorite* v. *Superior Court*, 181 Cal. 261 [8 A. L. R. 290, 184 Pac. 15].)

Appellants next attack the findings of the trial court which negative their contention that the lease and option had been modified by a subsequent agreement in reference to the eleven parcels of land described in the lease and option. It is their contention that it was agreed that appellants could purchase the eleven parcels separately from the rest of the lands involved for $17,913.80 cash and a $100,000 note secured by a deed of trust. Appellant Fremont Grant, Inc., also contends that it should have been granted specific performance of this modifying agreement as requested in its cross-complaint. Appellants introduced in evidence several

letters and telegrams passing between Peters and Benjamin, president of plaintiff corporation, which documents indicate that such a collateral agreement was entered into, subject, however, to certain terms and conditions. It appears that these eleven parcels, when the lease and option were executed, had been purchased at a foreclosure sale by plaintiff, but were still subject to redemption. The lease and option expressly excepts these eleven parcels from its terms "until the time of redemption thereof has expired without redemption", and directly implies that if unredeemed then to become subject to the lease and option. It was also provided in the lease and option that Peters should attempt to secure a deed from the owners of those properties quitclaiming their interest therein, including the right of redemption, to Peters, who agreed to immediately quitclaim to respondent, in which event these parcels were to become subject to the lease and option. In the so-called modifying agreement it was provided that as a condition precedent to permitting Peters to purchase these eleven parcels separate and apart from the other properties he must secure a quitclaim deed to these parcels from the owners. Admittedly this was never done by appellants, and respondent had to wait until the full period of redemption had expired before getting a good title to the property. The terms of the modifying agreement were never performed by appellants and terminated for that reason. ▓▓ Moreover, Fremont Grant, Inc., under no theory could secure specific performance of this modifying agreement. The agreement as shown by the evidence is silent as to the rate of interest that appellants were to pay on the deferred balance of the purchase price of $100,000, and is also silent as to the date of maturity of the indebtedness. Such an agreement is too uncertain to be capable of specific performance. (Sec. 3390, subd. 6, Civ. Code; 6 Cal. Jur. 215, sec. 142; *Klein* v. *Markarian,* 175 Cal. 37 [165 Pac. 3].)

▓▓ For still another reason we are of the opinion that the modifying agreement was not binding on respondent. The lease and option were in the name of and executed by the respondent under its corporate seal. The modifying agreement was entered into by Benjamin, who was president of respondent corporation. As far as the record is concerned Benjamin was without authority to thus modify the

contract of the corporation in reference to real property. The burden was upon Fremont Grant, Inc., to prove the allegations of the cross-complaint in reference to this modifying agreement, and to prove, if it desired the affirmative relief of specific performance, the authority of Benjamin to thus bind respondent corporation. Having failed to do so the modifying agreement cannot be held to be binding on the corporation. (*Black* v. *Harrison Home Co.*, 155 Cal. 121 [99 Pac. 494] ; 6a Cal. Jur. 1146, sec. 653; 6a Cal. Jur. 1138, sec. 648; 6a Cal. Jur. 1153, sec. 655.) It therefore follows that the findings to the effect that no modifying agreement binding on the respondent had been entered into, and denying specific performance of such agreement, are amply supported by the evidence.

█ The appellants next complain of the finding that they were in default in the payments of rent under the lease, and of the finding that the lease was properly terminated on December 23, 1929, pursuant to notice given by respondent on December 17, 1929. Appellants admit that they did not pay the $1,000 installments of rent falling due on the 15th of each month from July to December, 1929, but contend that respondent had received certain rentals from subleases which under the terms of the lease and option should have been applied on the rent due from appellants. It is claimed that these sums were more than sufficient to pay the rent due from appellants. The lease provided that all rents under existing and future leases whether accruing prior or subsequent to January 15, 1928, should be paid to respondent unless the option should be exercised, in which event said rents "will be credited by the lessor on the said rent *thereafter accruing* . . . provided however that the lessee *shall not then be in default* in the performance of any of the covenants or agreements of this indenture . . . including the payment of the said rent . . . ". The court found that no rents from subleases had been received by respondent which under the lease should have been applied to rentals. This finding is amply supported by the evidence. No rents were received by respondent from subleases until July of 1929, and the evidence indicates that this was caused by the failure of Fremont Grant, Inc., to execute or approve such subleases. It is admitted that the installments of rent due from appellants for the months July

to December, 1929, were not paid. On December 17, 1929, respondent properly and fully notified appellants that unless delinquent installments were paid by December 23, 1929, respondent elected to terminate the lease. This power to so terminate was expressly given respondent by the terms of the lease. The appellants having failed to comply with the notice the lease was terminated on December 23, 1929. The findings to this effect are amply supported by the evidence.

The last point urged by appellants is that they properly exercised the option to purchase before November 30, 1929, and therefore subsequent demands of respondent to pay rent were ineffectual to place appellants in default. As already stated the lease provided that if notice of election to exercise the option were given to respondent by November 25, 1929, and if the purchase price of $570,000 were paid by November 30, 1929, appellants could purchase, providing that at that time they were not in default under the terms of the lease. There is no doubt that appellants attempted to give notice of election to purchase. There is some doubt as to whether the letter containing the notice was received within the time specified in the contract. We are of the opinion that it was so received. However, this can avail appellants nothing. In the first place they were then in default in their rental obligations under the lease, and therefore under the terms of the option they had no power to exercise the option of purchase. In the second place appellants at no time paid or tendered the purchase price of $570,000 which by the provisions of the lease and option had to be paid by November 30, 1929. Not having complied with the terms thereof the option terminated November 30, 1929.

It is our opinion that this appeal presents nothing more than an attack on findings based on conflicting evidence. Under such circumstances the findings and judgment cannot be disturbed on appeal.

The judgment is affirmed.