[Civ. No. 12665. First Dist., Div. Two. June 1, 1944.]

WILL G. MILLS et al., Appellants, v. J. E. SKAGGS et al., Respondents.

Crist & Beene for Appellants.

Wm. Petros for Respondents.

SPENCE, J.—Plaintiffs sought specific performance of an agreement for the purchase of real property, which agreement was evidenced by a "Deposit Receipt." Defendants filed an answer and cross-complaint seeking cancellation or reformation of said agreement. The trial court found that defendants had executed said deposit receipt but further found "that said deposit receipt is so indefinite and uncertain in its terms as to be impossible of specific performance. . . ." Judgment was entered denying specific performance and from said judgment, plaintiffs appeal.

The deposit receipt was drawn by a real estate broker and the evidence offered by defendants showed that it was signed by the defendants, as sellers, without reading the same and in reliance upon the real estate broker's representation that it contained the terms upon which defendants had agreed to sell. The terms to which defendants had agreed called for a purchase price of $4,750, as provided in the deposit receipt, but also called for a down payment of at least $600 and a monthly payment of at least $30 upon a second deed of trust to be executed in their favor. The deposit agreement, however, called for a down payment of only $200 and for a total monthly payment of $40 to cover payments on both the first and second deeds of trust without any specification of the portion of the $40 to be applied upon either.

The pertinent portion of the deposit receipt read as follows: "The total purchase price is Four Thousand Seven Hundred Fifty ($4,750.00) Dollars and the balance of same is to be paid within 10 days from date hereof, as follows: $200.00 cash and 1st deed of trust to American Trust Co. for $2,750.00 and 2nd deed of trust to James E. Skaggs & wife for

$1,800.00. Interest on notes to be 6% per annum; total monthly payments inc. interest to be $40.00.''

It appears that there was an existing first deed of trust on the property, the balance upon which first deed of trust was approximately $400 less than the amount provided in the deposit receipt for the first deed of trust with the American Trust Company; and it further appears probable that the real estate broker believed that a deal might be consummated by raising the amount of the first deed of trust by $400 and adding that amount to the $200 in cash to make up a cash payment of $600. But the deposit receipt was silent as to whether the new first deed of trust was to be executed by plaintiffs or defendants; as to what. was to be done with the money obtained by increasing the amount thereof; and as to the terms of said first deed of trust and particularly as to the portion of plaintiffs' total monthly payment of $40 to be applied upon said first deed of trust. The deposit receipt, as above indicated, was likewise silent as to the portion of plaintiffs' total monthly payment of $40 to be applied upon defendants' second deed of trust. It is of course obvious that the raising of the amount of the first deed of trust would have had the effect of diminishing the security afforded by the second deed of trust and that the terms of the transaction, as set forth in the deposit receipt, were not the same as the terms to which defendants had previously agreed. We will make no further reference to this difference, however, as the trial court made no findings or conclusions with respect to the allegations of the cross-complaint relating thereto. The failure of the trial court to make such findings or conclusions is not an issue on this appeal which is one taken by plaintiff alone from the judgment denying specific performance.

We find no error in the ruling of the trial court denying specific performance. Even if it be assumed that said agreement was valid in law and that an action for damages might have been predicated upon its breach, it is well settled that an agreement that is incomplete, uncertain or indefinite in its material terms will not be specifically enforced in equity and ''that the degree of certainty required in an equity action is much greater than required in an action at law.'' (*Janssen* v. *Davis*, 219 Cal. 783, 787 [29 P.2d 196] ; *Pascoe* v. *Morrison*, 219 Cal. 54 [25 P.2d 9] ; *Long Beach Drug Co.* v. *United Drug Co.*, 13 Cal.2d 158 [88 P.2d 698, 89 P.2d 386] ). This general principle has been applied in denying specific enforcement of

agreements which were incomplete, indefinite or uncertain with respect to the terms of payment of deferred balances or the terms of the incumbrances representing such deferred balances. (*Mariposa Commercial & Min. Co.* v. *Peters,* 215 Cal. 134 [8 P.2d 849]; *Schellenbach* v. *Lagasse,* 202 Cal. 665 [262 P. 304]; *Buckmaster* v. *Bertram,* 186 Cal. 673 [200 P. 610]; *Klein* v. *Markarian,* 175 Cal. 37 [165 P. 3]; see also cases collected in note in 37 A.L.R. 365.) In our opinion the trial court's denial of specific performance was justified by the uncertainty and indefiniteness of the agreement in the particulars to which reference has already been made.

Plaintiffs cite and rely upon *Janssen* v. *Davis,* 219 Cal. 783 [29 P.2d 196], but we believe that case is distinguishable. The plaintiff in that action was the seller who sought specific performance by the buyer of an oral agreement which had been fully performed on the part of the seller. Specific performance was granted by the trial court but the judgment was reversed upon grounds other than the alleged uncertainty or indefiniteness of the agreement. The situation presented in that case was so unusual as to cause the Supreme Court to express regret that a reversal was required as the case was one "clearly calling for the equitable relief granted." (p. 790.) There the plaintiff, a building contractor, had agreed to construct and had constructed a $13,250 home for defendant, a real estate agent who had previously sold property for plaintiff and to whom plaintiff was indebted in the sum of approximately $2,500. While defendant had moved into the home upon its completion in 1923 and was still in possession at the time of the trial several years later, he had paid plaintiff nothing on account of the purchase price or on account of taxes or other expenses connected with the property and he had refused to carry out his agreement to sign a note in favor of plaintiff in the sum of $6,212.50 and a second mortgage to secure said note. There was a conflict in the evidence as to whether said note was to provide for monthly installments of $50, $55 or $100. The trial court made a finding that defendant had agreed to pay said note in monthly installments of $75 and it was held on appeal that this finding was unsupported by the evidence. On page 789, the court states, "It is to be noted that the point here made is not that the amount of the installments was uncertain, but that the amount fixed by the trial court finds no support in the record. If the court had fixed $100, $50 or $55 as the amount of the monthly in-

stallments, such finding would have been amply sustained by the record.''

The language of the decision upon which plaintiffs rely is found on page 788 and reads as follows: ''There is no principle of equity requiring all the terms and conditions of the proposed agreement to be set forth in the contract. The usual and reasonable terms found in such contracts are, in contemplation of the parties, a part of such contract. . . . That rule has particular application to the facts of this case, where the evidence shows that defendant was engaged in the business of selling houses for the plaintiff, and that the agreement was that the debt due plaintiff should be evidenced by the type of agreement usual in such cases.'' It seems clear from a reading of the entire opinion that the quoted language was directed at claims of uncertainty other than the claim that the agreement was uncertain as to the amount of the monthly installment to be paid upon the note secured by the second mortgage.

Relying particularly upon the statement that ''The usual and reasonable terms found in such contracts are, in contemplation of the parties, a part of such contract,'' plaintiffs give in their brief their version of ''the usual and customary terms of payments of real estate loans to lending institutions'' and argue therefrom that the agreement here should be construed as providing for a monthly installment of $24 per month on the first deed of trust and of $16 per month on the second deed of trust. It is a sufficient answer to plaintiffs' argument to state there is no evidence in the record concerning any such ''usual and customary terms of payment'' and that even plaintiffs' version thereof shows that such terms are not fixed but are variable.

A further distinction between the cited case and the present one is that in the cited case the trial court granted specific performance and in the present case the trial court denied specific performance. The authorities indicate that the trial court is vested with certain discretion in determining whether specific performance should or should not be granted under the facts of any particular case. ▉ As was said in *Lind* v. *Baker*, 48 Cal.App.2d 234 at page 245 [119 P.2d 806], ''The enforcement of a contract by a decree of specific performance rests in the sound discretion of the court, a judicial discretion to be exercised in accordance with established principles of equity with reference to the facts of the particular case. The

contract may be valid in law and not subject to cancellation in equity and yet the terms thereof and the attendant circumstances may be such as to require the court to deny its specific performance.'' (See, also, 23 Cal.Jur. 418; 58 C.J. 855 and cases cited.) *Janssen* v. *Davis, supra,* was a case involving facts clearly calling for equitable relief by way of specific performance but we find no facts in the present case to indicate that the denial of equitable relief by way of specific performance constituted an abuse of discretion on the part of the trial court.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.