[Civ. No. 23273.   Second Dist., Div. Two.   Oct. 17, 1958.]

CHARLES ROBERTS et al., Appellants, v. GEORGE ADAMS, Respondent.

Cooney & Cooney and Matt D. Cooney for Appellants.

Earl J. Opsahl for Respondent.

ASHBURN, J.—Action for specific performance, damages, declaratory judgment and other relief. From a judgment in favor of defendant Adams, plaintiff appeals.

A lease from Adams, as lessor, to plaintiff Roberts, as lessee, covering certain real property in Van Nuys, California, and for a term of five years from March 23, 1954, contains an option reading as follows: "It shall be a condition of this tenancy that the lessee Charles Roberts shall have the option to purchase the said property as per map reported in Book 19, pages 1 to 34 for the total sum of $85,000.00, *payable as mutually agreed by both parties.*" Emphasis has been added to the words which engendered this controversy.

Plaintiff swore that this paragraph was in the lease when

signed; defendant was equally positive that it was not there and that he at no time gave plaintiff an option to buy the property. ■ After the court had ruled in defendant's favor the parties waived findings, with the result that it must be presumed upon appeal that the judge found in favor of the prevailing party every fact necessary to sustain the judgment. (*Gray* v. *Gray,* 185 Cal. 598, 599 [197 P. 945]; *Bekins Van Lines, Inc.* v. *Johnson,* 21 Cal.2d 135, 137 [130 P.2d 421].) Application of this rule would imply a finding that the option paragraph was not in the lease and there was never an option of any sort. But the trial judge's oral ruling was placed squarely upon the unenforcibility of the option paragraph, assuming it to be a part of the lease. The attorneys have presented that as the controlling issue upon this appeal and we prefer to decide the cause upon that basis. We therefore proceed upon the assumption that the option was at all times a part of the lease,—an option to purchase for the total sum of $85,000 "payable as mutually agreed by both parties."

Of course a later agreement upon terms of payment and security therefor would have cured the defect in the writing. (*Laughlin* v. *Haberfelde,* 72 Cal.App.2d 780, 785 [165 P.2d 544]; 6 Cal.Jur., § 150, p. 227.) But there was no subsequent oral or written agreement. Defendant at all times repudiated the alleged obligation.

Plaintiff-appellant testified that there were certain conversations about terms of payment, defendant insisting that he wanted part of the purchase price "under the table" and he would specify the details when the time for payment arrived. But the evidence shows that these conversations (if they occurred) were merged into the writing when at defendant's request plaintiff placed in the agreement the phrase, "payable as mutually agreed by both parties."

■ It is Hornbook law that an agreement to make an agreement is nugatory, and that this is true of material terms of any contract. ■ But the law has progressed to the point that it " 'does not favor but leans against the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if that can be ascertained.' " (*California Lettuce Growers* v. *Union Sugar Co.,* 45 Cal.2d 474, 481 [289 P.2d 785, 49 A.L.R.2d 496].) This softening of the original concept of *nudum pactum* has extended to a failure to state the price of a purchase. ■ "Unexpressed

provisions of a contract may be inferred from the writing or external facts. ██ Thus it is well settled that a contract need not specify price if it can be objectively determined.'' (*Id.* p. 482.) ██ But, in the absence of internal or external indicia of what the parties would have agreed upon, the court cannot supply the omitted provision, for that would amount to making a contract for the parties. ██ It is firmly established as the law of California that failure to specify or furnish a standard for determination of terms of payment and method of securing the unpaid balance of the purchase price of real or other property is fatal to its enforceability notwithstanding any desire of the courts to be liberal and helpful.

*Ablett* v. *Clauson,* 43 Cal.2d 280 [272 P.2d 753], an action for declaratory relief, trespass and injunction, dealt with an option for a renewal lease for a period of five years ''upon terms to be then agreed upon.'' ██ Holding the option to be unenforceable the court said, at page 284: ''The general rule regarding contracts to agree in the future is stated to be as follows: 'Although a promise may be sufficiently definite when it contains an option given to the promisor or promisee, yet if an essential element is reserved for the future agreement of both parties, the promise can give rise to no legal obligation until such future agreement. Since either party by the terms of the promise may refuse to agree to anything to which the other party will agree, it is impossible for the law to affix any obligation to such a promise.' (1 Williston, Contracts (Rev. ed. 1936) 131, § 45.) The rule is well established in this state [citations], and, in conformity with the weight of authority in other states [citation], it has been held that an option agreement which leaves an essential term to future agreement is not enforceable. [Citations.] ''

*Klein* v. *Markarian,* 175 Cal. 37 [165 P. 3], was an action for specific performance of an option to buy land for $45,000, payable $11,000 within 10 days after notice of acceptance and the balance ''in quarterly yearly payments with interest at 6% annually.'' (P. 39.) It was held that the quoted clause was too vague and ambiguous to support that form of action as it failed to indicate the number of such payments or the amount of each; also, that failure to provide how the obligation for deferred payments was to be evidenced or secured was equally fatal to specific performance. It appears, however, from the Ablett case, *supra,* and authorities hereinafter cited, that an agreement to agree upon a material term of a contract, as distinguished from mere silence on the particular

subject, renders the instrument unenforceable in any form of action because it is a mere nullity.

Five cases decided by this court affirm and apply the principle announced in the Ablett decision. They are *Bonk* v. *Boyajian,* 128 Cal.App.2d 153 [274 P.2d 948]; *Burgess* v. *Rodom,* 121 Cal.App.2d 71 [262 P.2d 335]; *Kline* v. *Rogerson,* 80 Cal.App.2d 158 [181 P.2d 385]; *Avalon Products, Inc.* v. *Lentini,* 98 Cal.App.2d 177 [219 P.2d 485]; and *Vangel* v. *Vangel,* 116 Cal.App.2d 615 [254 P.2d 919].

*Bonk,* though a specific performance action, announces rules which preclude any form of relief based upon a mere agreement to make an agreement. That case involved an option to purchase property for $7,000 with a down payment of $3,000 or more and "monthly payments on the balance due to be agreed upon at the time of purchase." At page 155 the court said: " 'Uncertainty, as to the terms and conditions of deferred payments is fatal to a claim for specific performance.' [Citations.] Where, in a business transaction, an important item is reserved for future determination no enforceable obligation is thereby created for 'neither law nor equity provides a remedy for a breach of an agreement to agree in the future.' [Citations.] In the Ablett case, the court points out that 'an option agreement which leaves an essential term to future agreement is not enforceable.' The court may not imply or speculate upon what the parties will agree. [Citations.] A statement of the rule and the reason therefor is to be found in 1 Williston, Contracts (1936), section 45, page 131, where the author says: '. . . if an essential element is reserved for the future agreement of both parties, the promise can give rise to no legal obligation until such future agreement. Since either party by the very terms of the promise may refuse to agree on anything to which the other party will agree, it is impossible for the law to affix any obligation to such a promise.' "

*Burgess* was an action for damages for breach of a contract to purchase realty. The document provided for a deposit of $200 and a balance of $5,000 to be paid within 30 days from date, to wit: "Terms to be made as soon as new purchaser arranges for new mortgage now held by . . . Bank to Burgess (the seller)." (P. 73.) This instrument was held to be fatally uncertain, the court saying at page 73: "An action for damages for breach of contract for the purchase or sale of real property will not lie unless the writing contains the essential terms and material elements of such an agreement without

recourse to parol evidence of the intention of the contracting parties. [Citations.] The law does not provide a remedy for breach of an agreement to agree in the future, and the court may not speculate upon what the parties will agree.'' Referring to the language of the particular agreement it was further said, at page 74: ''How this balance would be paid, whether in monthly, quarterly, semiannual or annual installments, or at the end of a specified term of years does not appear. Likewise, absent is the rate of interest. The security, if any, to be provided for this balance, whatever it might be, is not specified. These are all important items, yet agreement with respect to each of them was 'left open for future settlement.' It is therefore established from the language which the parties painstakingly wrote into the blank space in the deposit receipt that their minds had not met upon these essential and material terms of the deal. They had simply agreed to agree upon terms in the future. In such circumstances there was no binding obligation upon the buyer to accept and pay for the land.''

*Kline* v. *Rogerson, supra,* was an action at law. A deposit receipt provided for payment of the balance of the purchase price ''at $5,000 or more per year, plus interest at 5% or terms *to mutual satisfaction.*'' This was held to be no agreement, the court saying: ''The deposit receipt signed by defendant did not constitute an agreement of purchase and sale by the parties since it expressly provided that the balance of the purchase price was to be paid 'at $5,000 or more per year, plus interest at 5% or terms *to mutual satisfaction.*' Since the parties never agreed upon terms which were mutually satisfactory, there was never an agreement of purchase and sale. Hence the plaintiff was not entitled to any portion of the purchase price.'' (P. 160.)

*Avalon Products, Inc.* v. *Lentini, supra,* was an action for damages. It considered a contract for purchase of ice cream freezer equipment. The purchase order contained a description of the goods, the delivery date, the purchase price less the down payment, and further said: ''Method of payment to be agreed upon before delivery.'' (P. 179.) Recognizing that ''[t]he law leans against the destruction of contracts because of uncertainty and favors an interpretation which will carry into effect the reasonable intention of the parties if it can be ascertained,'' the court nevertheless said: ''Where, however, there has been no agreement upon an essential ele-

ment and the contract provides no means for the determination thereof but leaves it to the future negotiation and agreement of the parties, the contract is void. (*McIllmoil* v. *Frawley Motor Co., supra* [190 Cal. 546 (213 P. 971)].) Thus it is true generally that if no price is fixed in the contract the law, upon delivery and acceptance of the commodity sold, implies an understanding between the parties that a reasonable price is to be paid; but where the price of the commodity called for but not delivered is to be subsequently ascertained by the agreement of the parties, the contract of sale is incomplete and unenforceable until the price is fixed or agreed upon." (P. 179.)   Also: "Although a greater degree of certainty is required in a contract which is sought to be specifically enforced, the general rule is that a provision in a contract which leaves open the terms of payment for future negotiation renders the contract incomplete and uncertain in one of its material features and for that reason unenforceable in equity. (49 A.L.R. 1464 and cases cited.)   In California the rule is the same and no action will lie to enforce the performance of a contract or to recover damages for its breach unless it is complete and certain."   (P. 180.)

*Vangel* involved a partnership agreement which provided that the parties would agree from time to time upon a fixed amount to be drawn by each partner.  The court said, at page 631 : "An examination of the quoted part of the partnership agreement clearly indicates that although the fixing of compensation for *each* of the partners was in the contemplation of the parties, it was cast in the form of an agreement reserving this matter for future determination.  However, the parties were unable to reach an agreement on this deferred subject. Under such circumstances, 'neither law nor equity provides a remedy for breach of an agreement to agree in the future.' "

In accord with the foregoing decisions are: *Mills* v. *Skaggs,* 64 Cal.App.2d 656, 658 [149 P.2d 204] ; *Mariposa Commercial etc. Co.* v. *Peters,* 215 Cal. 134, 140 [8 P.2d 849] ; *Buckmaster* v. *Bertram,* 186 Cal. 673, 676 [200 P. 610] ; *Gould* v. *Callan,* 127 Cal.App.2d 1 [273 P.2d 93] ; *Bean* v. *Holmes* (Tex. Civ. App.), 236 S.W. 120, 121 ; *Monahan* v. *Allen,* 47 Mont. 75 [130 P. 768, 769].   See also annotation in 49 A.L.R. 1464; 51 C.J.S. § 56b (2), p. 597; 12 Cal.Jur.2d § 107, p. 309.

Appellant relies principally upon *Chaney* v. *Schneider,* 92 Cal.App.2d 88 [206 P.2d 669], which was a declaratory relief action.  A lease contained this provision: "At the expiration of this lease, Lessor agrees to give Lessee first refusal for an

additional term of lease, at rentals and terms to be mutually agreed upon at that time, provided, the said Lessee shall faithfully comply with and perform all of the covenants conditions of this lease.'' (P. 89.) The lessor refused to negotiate when the time came. The trial court held that the lessee was entitled to an additional five years upon the same terms and conditions as the original lease but at an increased rental. In affirming the judgment the court said: ''Leases which left anything for future agreement of the parties were for a long time generally held to be void for uncertainty. The modern trend of decisions would seem to be in relaxation of the strictness of the rule, particularly when the amount of rental is left to future agreement. If there is in the writing a sufficient definite standard or method for the determination of the rental, and if the amount thereof is the only thing to be determined, courts of equity will hold that the parties agreed upon a reasonable rental for the extension, and will declare it if they do not agree. [Citations.]

''The difficulty in enforcing the clause here under consideration lies in the fact that it provides for mutual agreement as to the terms as well as to the rental for the extended period of the lease.'' (P. 89.)

Also: ''Like all other branches of the law, the rules as to uncertainty in interpreting contracts are developing along with changing conditions in business and human affairs.'' (P. 90.) ''California has adopted the rule of practical business utility in *Streicher* v. *Heimburge, supra* (205 Cal. 675 [272 P. 290]). In that case a lease provided for renewal upon rental to be determined by arbitration. It was held that when arbitrators failed to agree the court would fix a reasonable rental.'' (P. 91.) ''So in this case here before us, the right of renewal constituted a substantial element in the agreement of the lessor and lessee, and inasmuch as the lessor failed and refused to agree upon the terms of the renewal or the rental, these terms were properly declared by the trial court.'' (P. 92.) There was no petition for hearing in the Supreme Court, but the case was discussed in *Ablett* v. *Clauson, supra,* 43 Cal.2d 280, 286, as follows: ''The trial court adjudged that the option entitled the lessee to an additional term of five years, upon the same terms and conditions as the original lease, but at an increased rental. Upon appeal, the judgment was affirmed, the court ruling that the renewal of the lease was the 'essence of the contract' with the other terms and conditions merely incidental details.

"Although there is an intimation in other decisions that a court of equity is empowered to fix a reasonable rental under an option provision reserving that matter to the future agreement of the parties [citations], the extensions of the rule suggested by the Chaney decision seem seriously questionable. The basis for upholding option provisions which leave the amount of rent to future agreement is that the implied agreement of a reasonable rent if the parties are unable to agree, provides a sufficient standard for enforcing the option without requiring the court to write a new contract for them. But certainly the Streicher case is not authority for the proposition, relied upon in the Chaney decision, that the court may fix all of the provisions of a new lease without ascertainable standards in the option agreement. [Citation.]" This leaves the Chaney decision in such status that it cannot be accepted as controlling at bar.

*California Lettuce Growers* v. *Union Sugar Co., supra,* 45 Cal.2d 474, is also relied upon by appellant. In that instance there was a contract for the sale of beets which was claimed to be void because no provision for price, or time and place of delivery was contained therein and no duty of Union Sugar to accept and pay therefor expressly stated. (P. 481.) At page 481 the opinion uses language above quoted herein. The holding is that the pattern of prior dealings between the parties was sufficient "to support the conclusion that the parties intended the 1949 crop to be governed by the procedure previously followed." (P. 483.) This conclusion in no way detracts from the primary proposition stated at page 481: "Where a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable. [Citations.] If the price of a commodity in a sales contract is intended to be left to the subsequent agreement of the parties, the purported contract is merely an agreement to agree and therefore *nudum pactum* until the price is fixed or agreed upon. [Citations.] Unless the court has ascertainable provisions of agreement before it, there is no contract on which the court may act." We do not regard this decision as contrary to the Ablett and other cases above discussed.

Appellant's counsel earnestly argues that he was prepared and offered to pay cash upon the exercise of the option, and that this fact cured any uncertainty about terms of payment that inhered in the option clause of the lease. The point has been ruled adversely in several cases.

*Klein* v. *Markarian, supra,* 175 Cal. 37, 41, says that appellant "claims, however, that all uncertainty was removed by his act of tendering four notes, together with a mortgage to secure them. The defendant having then failed to specify any objections to the terms of the instruments tendered, he was, it is argued, precluded from objecting thereafter. . . . No matter what the defendant might have said in response to the offer, the plaintiff could not, of course, have remedied the defects in the written option. The writing was so indefinite that the plaintiff could not, within its terms, lay the foundation for a decree of specific performance. To hold the defendant bound by a tender outside of the provisions of the option would be to make a new contract for him."

In *Burgess* v. *Rodom, supra,* 121 Cal.App.2d 71, the balance of the purchase price was $5,000. The court said, at page 74: "Plaintiff offers to supply the absent elements of an enforceable agreement by proving that respondent arranged for a loan at the bank for $2,200; that she had more than $2,800 in her account (but not in the escrow) at the bank; and that she moved into the property, remaining for about three weeks and moving out because of alleged misrepresentations relative to its construction. Such proof would be *aliunde* the writing and is not admissible for the purpose of establishing an essential and material feature of the abortive agreement."

*Westphal* v. *Buenger,* 324 Ill. 77 [154 N.E. 426, 427] : "An agreement in writing, which does not purport to give an absolute right, without further negotiations thereon, cannot be specifically enforced. Appellant contends that he is now ready and willing to pay the entire $16,000, but such is not of the terms of the contract. There were to be mortgages, and, while it might be generally considered more acceptable to have the actual cash than mortgages, the court will not make a new contract for the parties, because it appears that conditions claimed by one party, but not in the contract, might prove more beneficial to the other party."

We are persuaded that the ruling of the trial judge is correct. In view of this conclusion arguments presented by counsel upon other points (e. g. whether Harry J. Grella is properly named as an appellant) require no discussion.

Judgment affirmed.

Fox, P. J., and Herndon, J., concurred.