[Civ. No. 24335. Second Dist., Div. Two. Mar. 8, 1960.]

RICHARD NOEL et al., Respondents, v. DUMONT BUILD-ERS, INC. (a Corporation) et al., Appellants.

692

Arthur V. Kaufman for Appellants.

Milton Zerin for Respondents.

KINCAID, J. pro tem.†—Appeal is taken by defendants from a judgment in favor of plaintiffs in the sum of $10,500 against Dumont Builders, Inc., and $1,500 against Ernst Meer. Plaintiffs' complaint contains three causes of action the first of which is for rescission of a written agreement between plaintiffs and Dumont Builders, Inc., hereinafter referred to as "Dumont," and for the return of $10,500. The second cause of action is a common count for money had and received for the use and benefit of plaintiffs of $10,500. The third is a similar general count for $1,500 and is directed against Meer only.

The record of the trial herein clearly indicates that plaintiffs' right to recover under the second general count depends upon the allegations and proof of the specific first count in rescission. It is further clear that plaintiffs entirely relied on such proof to establish their third general count against Meer. Under such circumstances, at least as to the first and second counts, the complaint is to be considered as a whole and as stating but one cause of action. (*South* v. *Wishard,* 123 Cal. App.2d 642, 650 [267 P.2d 827].)

Plaintiffs' first cause of action averred that on July 5, 1957, plaintiffs and Dumont entered into the following written contract: "Whereas Mr. and Mrs. Richard Noel are desirous of purchasing and having constructed a residence as per plan and specification on the property known as Lot #61 of Knollwood Estates presently owned by Dumont Builders, Inc., and authorize Dumont Builders, Inc. to commence with all necessary preliminaries to start construction on said lot. Exact price of lot and house to be determined before final papers are signed. Mr. and Mrs. Richard Noel are the owners of the residence situated at 19844 Parthenia, Northridge, California. Said property becomes part of this contract inasmuch as the sale of the property will have to be consummated before contract pertaining to the Knollwood property becomes binding and valid. A deposit retainer of $2,000.00 to be given

---

†Assigned by Chairman of Judicial Council.

upon signing of this agreement. Said retainer to be refunded in full if final agreement is not approved.''

It is further alleged that pursuant to said contract plaintiffs paid Dumont $10,500. That at all times plaintiffs endeavored to sell their described residence but have been unable to do so. Further that the parties have failed to agree upon the exact price of the new house and lot built under said agreement. That on May 19, 1958, plaintiffs delivered to defendants a notice of rescission of ''that certain purported agreement of construction, purchase and sale, dated July 5, 1957, and any other agreement pertaining to construction, purchase and sale of that real property known as: Lot No. 61 of Knollwood Estates, and generally described as 16808 Knollwood Drive, Granada Hills, California, for the reasons, . . .'' that the parties have failed to agree upon the price of the Knollwood property and plaintiffs have failed to sell their Northridge dwelling.

By their answer the defendants denied the said allegations and by way of affirmative defense alleged certain facts assertedly establishing that the plaintiffs have waived the provisions of the agreement of July 5, 1957, and by their conduct are now estopped from rescinding said agreement for the construction and purchase of the property.

The allegations of the complaint were found true by the trial court and that plaintiffs have not waived the conditions of the written agreement of July 5, 1957, nor are plaintiffs estopped to assert their claims by reason of any act on their part.

It was expressly agreed at the trial that fraud was not an issue in the case.

The record before us discloses, without serious contradiction, that following the signing of the writing of July 5, 1957, plaintiffs paid Dumont the $2,000 deposit and the latter proceeded with preparation of the plans and specifications of the building. These plans were submitted to plaintiffs for study and they ordered several material changes, finally signing their approval of them. Plaintiffs thereupon asked Dumont to commence construction of the house. Plaintiffs said they did not want to sell their old house until two months before they could move into their new house because an escrow for the sale would take two months and they had no other place to move. Dumont thereupon began construction.

On August 1, 1957, plaintiffs, as buyers, executed a written deposit receipt on a California Real Estate Association Stand-

ard Form in which the sum of $2,000 was acknowledged as deposit on account of purchase price of $48,500 for the purchase of a home in Knollwood on Lot Number 61 ''as per spec. & drawings to changes made by Mr. Richard Noel— Home to have 2367 ft in house 400 ft carport overhang patio & walks 450 ft. . . . The undersigned Buyer offers and agrees to buy the above described property on the terms and conditions above stated and acknowledges receipt of a copy hereof.''

While the house was in the course of construction plaintiffs came on many occasions to see how the work was progressing. Plaintiffs at no time asked Dumont to stop building the house because they hadn't sold their old house. On the contrary, during the course of construction plaintiffs told Dumont they wanted many material changes made that were not in accordance with the plans and specifications. Change orders in connection with all of this work which was performed during the construction of the house were signed by plaintiffs and introduced in evidence.

When nearly completed the plaintiffs caused the house to be converted from gas to electricity though the plans called for gas. Plaintiffs further purchased appliances and had them delivered to the house.

In December, 1957, plaintiffs were asked by Dumont for additional money on account. Plaintiffs thereupon negotiated a loan of $10,000, secured by an encumbrance on their old house, and paid said defendant $8,500 thereof making a total deposit on account of the purchase price of the Knollwood property of $10,500.

After completion the house was tendered to plaintiffs on numerous occasions. It has never been occupied and is presently being held for the account of plaintiffs. On learning that plaintiffs had not sold their old house Dumont offered to let plaintiffs move in and to accept a second encumbrance pending the sale.

In April 1958, Noel went to Dumont and said plaintiffs had not sold their old house, they couldn't afford the new one at $48,500 even if they did sell their residence, they never agreed to pay more than $42,000 and would not go through with the purchase. The notice of rescission followed. Plaintiffs sold their old house some five months thereafter.

In addition to being an officer of Dumont, Ernst Meer was engaged in the house decorating business. In December of 1957, plaintiffs requested Meer to purchase carpets in their behalf for the house. Pursuant to such request Meer

took the plaintiffs to a place where they selected and purchased the carpet.

Plaintiffs further purchased drapes through the defendant Meer. These drapes were bought especially for the plaintiffs and were cut but not completely made. The drapes were measured according to the living room and second bedroom of the house at the request of the plaintiffs. They deposited the sum of $1,500 with Meer to apply on account of the purchase price of the carpets and the drapes so selected and purchased. The carpet and the draperies are being held for and are available to the plaintiffs at any time.

 The writing of July 5, 1957, was merely an agreement to make an agreement and hence had no legal efficacy at all. The leaving open of the price of the house, itself spelled a *nudum pactum* (*Roberts* v. *Adams,* 164 Cal.App.2d 312 [230 P.2d 900] ; 12 Cal.Jur.2d, § 111, p. 315; 17 C.J.S., § 49, p. 394), which will not support any type of action at law or in equity. (*Roberts* v. *Adams, supra,* at pp. 315, 318; *Ablett* v. *Clauson,* 43 Cal.2d 280, 284 [272 P.2d 753].) Secondly, the completion of a contract was subject to a condition precedent, namely, that "the sale of the property [plaintiffs' home in Northridge] will have to be consummated before contract pertaining to the Knollwood property becomes binding and valid," and that event never occurred until after plaintiffs had repudiated the house deal and demanded return of their money. (See 17 C.J.S., § 338, p. 792.) While later agreement upon the price of the house and performance of the condition concerning sale of Noels' own residence could have cured the fatal defects in the instrument of July 5, 1957 (*Roberts* v. *Adams, supra,* 164 Cal.App.2d 312, 314), it remained short of integration until those events should occur.

On August 1, 1957, the plaintiffs executed the above described buyer's deposit receipt. This document definitely fixes the price for the Knollwood house and lot and even assuming plaintiffs' belief that this was not to be the final agreement, it is a new and independent contract to purchase a particular lot with a home to be situated thereon, built to the specific style and measurements as directed by plaintiffs. That they expected to pay for it is shown by their delivery of $2,000 and $8,500 on account of the purchase price.

The subsequent course of events and the conduct of the parties herein demonstrate an abandonment and waiver of the condition precedent that plaintiffs' house must be sold before any contract could arise. "Waiver may be shown by

conduct; and it may be the result of an act which, according to its natural import, is so inconsistent with the intent to enforce the right in question as to induce a reasonable belief that such right has been relinquished." (*Medico-Dental etc. Co.* v. *Horton & Converse*, 21 Cal.2d 411, 432 [132 P.2d 457].)
■ "The existence of a waiver is not inconsistent with the existence of an obligation. The former must depend upon the latter." (*Bowman* v. *Santa Clara County*, 153 Cal.App.2d 707, 713 [315 P.2d 67].) ■ All parties (the Noels and representatives of Dumont) assumed and asserted that things would be worked out all right. When that did not occur plaintiffs brought this action for rescission and repayment to them of the $10,500 which they had paid on account of the purchase price of the house built for them. It is not an action for damages or specific performance, but sounds in assumpsit, which presupposes that defendant Dumont is in possession of moneys which in good conscience it is not entitled to retain.

Even without considering the written deposit agreement of August 1, 1957, the conduct of plaintiffs shows their implied agreement to buy the Knollwood property at least upon the basis of reasonable value. ■ It is the settled rule that a buyer who is in default upon a real estate contract, even if within the statute of frauds, cannot recover payments made by him to a vendor who has fully performed (as here), or who is willing to perform. In *Laffey* v. *Kaufman*, 134 Cal. 391, 393 [66 P. 471, 86 Am.St.Rep. 283], it is said: "The plaintiff, having made the contract, which is not unlawful nor against public policy, and having paid the money thereunder, cannot, of his own volition, and without fault of defendants, come into court and receive the assistance thereof to recover the money voluntarily paid. The money was paid for a valid consideration,—to wit, the agreement to convey the land. It was only part of the consideration for such conveyance. The conveyance was not to be made until the balance of the consideration was paid according to the agreement.

"Plaintiff, in order to entitle him to relief, must allege and show that he paid, or offered to pay, the balance of the consideration. The general rule is, that the vendee is not entitled to a conveyance until the full payment of the purchase-money, and the acts of payment and conveyance being mutual and dependent, neither party is in default until after tender and demand by the other. The plaintiff has wholly failed to allege any tender by him of the five hundred dollars remaining due, or that he offered to execute the note and mortgage as he

agreed, or that he ever demanded a deed. He alleges a refusal to convey, but it was not incumbent upon defendant Melvina to convey until the consideration was paid or offered to be paid by plaintiff as he had agreed.

"The right of the vendee of land, under a verbal contract, to recover the money or other consideration paid is by all the authorities confined to those cases where the vendor has refused or become unable to carry out the contract, the plaintiff himself having faithfully performed or offered to perform on his part."

This case was followed in *Walbridge* v. *Richards*, 212 Cal. 408, 413-415 [298 P. 971]; *Thompson* v. *Schurman*, 65 Cal. App.2d 432, 437-440 [150 P.2d 509]. An annotation entitled "Recovery of Payments on Oral Contract," appearing in 169 A.L.R., says at page 188: "According to the great weight of authority, the vendee in a contract which does not satisfy the requirements of the statute of frauds cannot recover payments made by him pursuant to the contract so long as the vendor is both willing and able to perform his part of the agreement, even though it would not be possible to enforce the contract against the vendor either at law or in equity." See also 49 American Jurisprudence, section 558, page 864; section 564, page 870. ■■■ It follows that plaintiffs have no right of recovery under their first and second causes of action herein.

■■■ The $1,500 deposit by plaintiffs represents the basis of their third general count. It stems from a single purchase agreement between plaintiffs and Meer individually for carpet and drapes for the new house. Admittedly no fraud or misrepresentation is involved. There is no claim that plaintiffs never ordered these items or that Meer had not fulfilled all obligations on his part to be performed. There is no evidence whatsoever that this agreement was conditional in any way upon the consummation of the writing of July 5, 1957, between plaintiffs and Dumont. It is not an "agreement pertaining to the construction, purchase and sale" of the involved property as described in the notice of rescission of plaintiffs. In view of this the record is entirely devoid of any evidence upon which the trial court could properly base its findings that Meer is indebted to the plaintiffs in the sum of $1,500 for money had and received.

It is clear that plaintiffs have no right of recovery herein. ■■■ In this connection the following language of *American Auto. Ins. Co.* v. *Seaboard Surety Co.*, 155 Cal.App.2d

192, 200 [318 P.2d 84], becomes pertinent: "If it be said that the views herein expressed depart from the theory upon which the case was tried the answer is that the rule confining the parties upon appeal to the theory pursued below does not apply to a question which is one of law only (*Panopulos* v. *Maderis*, 47 Cal.2d 337, 341 [303 P.2d 738]), and that an appellate court is never bound by concessions of counsel as to the applicable law (*Desny* v. *Wilder*, 46 Cal.2d 715, 729 [299 P.2d 257]) or by the interpretation of documents made by the trial court upon the basis of the terms of the written instrument without the aid of other evidence (*Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825] ; *Continental Cas. Co.* v. *Phoenix Constr. Co., supra,* 46 Cal.2d 423, 429-430 [296 P.2d 801])."

■■■ *Ward* v. *Taggart,* 51 Cal.2d 736, 742 [336 P.2d 534], says "Although this theory of recovery was not advanced by plaintiffs in the trial court, it is settled that a change in theory is permitted on appeal when 'a question of law only is presented on the facts appearing in the record. . . .' (*Panopulos* v. *Maderis,* 47 Cal.2d 337, 341 [303 P.2d 738] ; *American Auto Ins. Co.* v. *Seaboard Surety Co.,* 155 Cal.App.2d 192, 200 [318 P.2d 84].) The general rule confining the parties upon appeal to the theory advanced below is based on the rationale that the opposing party should not be required to defend for the first time on appeal against a new theory that 'contemplates a factual situation the consequences of which are open to controversy and were not put in issue or presented at the trial.' (*Panopulos* v. *Maderis, supra,* 47 Cal.2d at 341.) Such is not the case here."

The judgment is reversed.

Ashburn, Acting P. J., and Herndon, J., concurred.

A petition for a rehearing was denied March 18, 1960, and respondents' petition for a hearing by the Supreme Court was denied May 4, 1960.